[S. F. No. 6486.    Department Two.—December 27, 1915.]

D. D. WHITTEN et al., Appellants, v. JOSEPH B. DABNEY et al., Defendants and Respondents; FREDERICK E. MASON, Intervener and Respondent.

[S. F. No. 6591.    Department Two.—December 27, 1915.]

D. D. WHITTEN et al., Respondents, v. JOSEPH B. DABNEY et al., Defendants and Respondents; FREDERICK E. MASON, Intervener and Appellant.

CORPORATION—STOCK ISSUED IN PAYMENT OF PROPERTY—CONSPIRACY.—
It is within the power of a corporation to issue all of its stock in payment of property conveyed to it, and no illegal or fraudulent conduct is shown in such a transaction, on the parts of the grantors, by merely designating the transfer as the outcome of a conspiracy.

ID.—FRAUDULENT REPRESENTATIONS BY STOCKHOLDERS TO PURCHASERS—
WRONG AGAINST CORPORATION.—Fraudulent representations by the holders of the stock in a corporation, made for the purpose of inducing the public to purchase it, to the effect that the stock was treasury stock and that the proceeds of its sale would go into the

treasury of the company and be used in developing its properties, do not constitute a wrong against the corporation, which could be made the basis of an action by a stockholder suing on its behalf. The right of the individual stockholder thus defrauded is simply the right to proceed against the wrongdoers who had made the fraudulent representations to his injury.

ID.—INJURIES TO CORPORATION—ACTION BY STOCKHOLDER ON BEHALF OF CORPORATION—ACCOUNTING—FRAUD.—Stockholders of a corporation, who in pursuance of a conspiracy between themselves and by means of a control of the corporation by a dummy directorate, caused false dividends to be declared and paid out of the proceeds of the sale of the corporate stock, and false credits to be entered on the company's books, whereby their individual indebtednesses to the company were made to appear to have been paid and canceled, and who took commissions for the sale of treasury stock without authority from the corporation, and for the purpose of stilling the alarms of the stockholders and lulling them into repose, issued false statements as to the financial condition of the corporation, are guilty of wrongs against the corporation itself, for which an action will lie by a stockholder, suing on behalf of the company, for an accounting and a recovery into the treasury of the company of the amount of which it might be determined that the company had been defrauded.

ID.—STATUTE OF LIMITATIONS—DISCOVERY OF FRAUD.—The provision of the statute of limitations applicable to such action by a stockholder is subdivision 4 of section 338 of the Code of Civil Procedure, providing that actions for relief on the ground of fraud or mistake must be commenced within three years, but that the cause of action is not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake.

ID.—KNOWLEDGE OF FRAUD BY OTHER STOCKHOLDERS NOT SUING.—The right of a stockholder to maintain such an action on behalf of the corporation, which is commenced timely after the discovery by him of the facts constituting the fraud, is not affected by the fact that other stockholders had notice of the fraud and failed to bring action within the statutory limitation.

ID.—STOCKHOLDER SUING IS TRUSTEE—AUTHORITY TO COMPROMISE LIABILITY TO CORPORATION.—A stockholder who institutes such an action sues purely in a representative capacity and as a trustee to redress corporate injuries. His position in the litigation is similar to that of a guardian *ad litem*, and he has no authority, without the sanction of the trial court, to enter into a composition agreement with certain of the defendants for the release of their liability to the corporation.

ID.—COSTS—ACCRUED COSTS CANNOT BE CHARGED TO INTERVENER.—In such action costs which accrued before an intervener connected himself with the litigation should not be awarded against him.

APPEALS from a judgment of the Superior Court of Alameda County, and from an order refusing to strike out a cost bill.   William S. Wells, Judge.

The facts are stated in the opinion of the court.

Kemp, Mitchell & Silberberg, and Gibson & Woolner, for Plaintiffs and Appellants in No. 6486 and Respondents in No. 6591.

W. B. Rinehart, and W. H. H. Hart, for Defendants and Respondents.

John Ralph Wilson, and Walter G. Bonta, for Intervener and Respondent in No. 6486 and Appellant in No. 6591.

HENSHAW, J.—Plaintiffs as stockholders of the Dabney Oil Company sued defendants Dabney, Miley, and Butler, alleging certain fraudulent impositions practiced by them upon the Dabney Oil Company resulting in great loss to that company.   They asked for an accounting on behalf of the company against these defendants and a recovery into the treasury of the company of the amount of which it might be determined that the company had been defrauded.   A conspiracy to commit these asserted fraudulent acts is charged against the three men.   Their control of the corporation through its board of directors and the refusal of the corporation upon demand to prosecute this action is also set forth.   Frederick E. Mason, another stockholder, petitioned for leave to intervene and permission was granted. His complaint in intervention set up the same wrongs pleaded by plaintiffs and joined with them in their prayer for relief.

A general demurrer was interposed to these complaints and was sustained.   So, also, was a demurrer raising the bar of the statute of limitations to the prosecution of the action. From the judgment which followed, plaintiffs appeal in San Francisco No. 6486.   From that same judgment the intervener appeals in San Francisco No. 6591.   Both of these appeals present the same asserted error of the court in sustaining the general demurrer for absence of facts.   Both, too, present a like question upon the bar of the statute of limita-

tions.   In both, also, is involved the question of the right of
defendants Dabney and Miley to be dismissed from the action
by virtue of a composition agreement entered into between
them and the plaintiffs, to which composition agreement the
intervener was not a party.   And, finally, the intervener's
appeal (San Francisco No. 6591) presents a minor question
of the imposition upon him of certain costs growing out of
the award of the judgment in favor of the defendants.

Saving in the particulars which may be pointed out, the
complaints of plaintiffs and intervener may be treated as a
single pleading and spoken of as the complaint.   The com-
plaint charged that in January, 1901, the defendants "en-
tered into a conspiracy to defraud the future stockholders of
the Dabney Oil Company."   In furtherance of this con-
spiracy they caused the Dabney Oil Company to be incor-
porated and Dabney and Butler conveyed to it certain lease-
holds upon oil lands which they owned and which were of
the value of fifty thousand dollars, the Dabney Oil Com-
pany issuing and transferring to Dabney and Miley for these
leaseholds all of the stock of the corporation, the directors
agreeing to issue to Dabney and Miley, or to such persons
as they should direct, this stock as fully paid up and non-
assessable stock of the corporation.   It was quite within the
power of the corporation for it to issue all of its stock in
payment of the property which it received.   (*Turner* v.
*Markham,* 155 Cal. 562, [102 Pac. 272] ; *Garretson* v. *Pacific
Crude Oil Co.,* 146 Cal. 184, [79 Pac. 838] ; *Lum* v. *American
Wheel & V. Co.,* 165 Cal. 657, [Ann. Cas. 1915a, 816, 133
Pac. 303].)   Up to this point, therefore, no illegal or fraudu-
lent conduct is shown, and the acts of these defendants, so
far innocent in themselves, were not made corrupt by desig-
nating them as the outcome of a "conspiracy."   And we
here pause to point out that there seems to have been some
confusion in the mind of the pleader as to the wrongs which
he could right in this form of action.   Thus he charges the
creation of the conspiracy as being designed "to defraud
the future stockholders of the Dabney Oil Company."   But
no one of the individual wrongs of any of the stockholders is
subject to redress in this action.   Plaintiffs are allowed to
prosecute this action by virtue of their stockholders' relation-
ship to the corporation, but only for the purpose of redress-
ing wrongs and impositions which the corporation itself had

suffered. (*Turner* v. *Markham,* 155 Cal. 562, [102 Pac. 272].) These stockholders, as plaintiffs, therefore, occupied a strict fiduciary relationship to the corporation whose interests they were representing. Their position may not inaptly be compared to that of a guardian *ad litem,* to which consideration we will later return.

Proceeding now with the complaint and summarizing its allegations of wrongdoing on the part of these defendants, those allegations amount to this: That Dabney and Miley, having thus acquired title to all the stock of the corporation, entered into a secret agreement with Butler, by which upon terms Butler should purchase from them this stock, and for the purpose of inducing the public to purchase this stock, they represented to intending purchasers that the stock was treasury stock and that the proceeds from the sale of it would go into the treasury of the company and be used in developing the oil mining industry of the corporation. Again we must pause to say that these fraudulent representations, however injuriously they may have wronged the purchasers of stock, do not constitute a wrong against the corporation, which does not appear at this time to have had any treasury stock at all. The right of the individual stockholder thus defrauded would manifestly be simply the right to proceed against the wrongdoers who had made these fraudulent representations to his injury. However, it does appear that in furtherance of the design of these defendants to unload their stock upon the market as treasury stock they did commit certain flagrant wrongs upon the corporation itself. Thus it is made to appear that the stock was not issued to Dabney and Miley, but remained in the corporation stock-book subject to issue upon their demand. In August, 1901, they agreed in writing to contribute of their holdings two hundred and fifty thousand shares of the stock, to be designated and treated as treasury stock, and this offer was accepted by the corporation. In 1902 these defendants procured the corporation to accept an amendment to the terms of this gift, which at the time was a fully completed gift. By this amended agreement all of the stock sold prior to March, 1902, was to be considered treasury stock, and the proceeds thereof, amounting to seventy-six thousand dollars, accruing from the sale of ninety-nine thousand shares was to be paid into the treasury of the corporation, and additional stock of

Dabney and Miley (in indicated proportions) was to be taken over by the corporation as treasury stock sufficient to make up the two hundred and fifty thousand shares. It is charged that this was but a colorable transaction and that Dabney, Butler, and Miley failed and refused ever to turn over to or credit the corporation with this seventy-six thousand dollars. In March, 1902, Dabney, Miley, and Butler entered into a secret agreement whereby Butler was to buy the stock of Dabney and Miley, making payments at specified times in specified amounts. It was agreed that Butler "shall have the naming of the entire directory of the company," and Miley and Dabney agreed that they would always vote their remaining stock "for such persons as directors as shall be designated by" Butler. And finally, this agreement provided that Butler would from time to time sell the treasury stock and turn into the treasury of the company the proceeds thereof, "less fifty per cent which he shall retain as commission." Under these agreements Butler took the active management and control of the corporation in 1902, and continued in such absolute possession, dominion, and control through dummy directors up to and including the date of the commencement of the action. To stimulate the sale of the stock, false dividends were declared and paid, not out of the earnings of the corporation, but out of the proceeds of the sale of the stock. Further, it is charged that Dabney and Butler owed the corporation large sums of money; that they never paid these indebtednesses, but caused false credits to be entered and appear on the books of the corporation, whereby these indebtednesses were made to appear to have been paid and canceled. Specific instances of this are given. Further, it charged that Butler took commissions to the amount of thirty-eight thousand dollars from the sale of the treasury stock of the corporation without authority from the corporation; that these acts of wrongdoing and misappropriation of funds were either known to the defendants, or were done by Butler in furtherance of the conspiracy to unload their stock, in which the three defendants had joined. Finally, it is charged that from time to time Butler, for the purpose of stilling the alarms of the stockholders and lulling them into repose, put forth false representations as to the financial condition and future prospects of the corporation, and, specifically, in 1908, sent out a circular report to the

stockholders in which he declared that he had never "received one cent in salary or one cent in cash or stock as dividends upon my holdings, or one cent of advantage from the company in any way, either directly or indirectly. . . . It is true I have sometimes been forced to sell stock, but I have never sold any except to procure money to loan to the company, or to use directly in the promotion of its interests." The falsity of these representations is asserted, and it is charged that they were made in aid of the iniquitous plan of stock jobbing into which the defendants had entered.

This sufficiently indicates the gravamen of the charges of wrongdoing as they affect the corporation, and it certainly needs no discussion to establish that they charge sufficient facts to demand an investigation and inquiry by the court of equity to which the appeal has been made. So true and so apparent do we think this is, that we conclude that the court sustained the demurrer upon the ground that the statute of limitations was well pleaded, and to this proposition we next come.

Plaintiffs allege that in 1905 one Gilbane, a stockholder, "and a few other stockholders, all residents of Providence, Rhode Island," attempted to secure full knowledge of the condition of the affairs of the corporation. They employed an accountant to examine the books of the corporation. He was allowed to examine only the books which were turned over to him by Butler as the books of account. They were not the original books, but contained only rewritten portions of the books. In 1906 this accountant made an incomplete report to these stockholders and stated these facts, and, further, that it appeared from his investigation that Dabney and Butler were indebted to the corporation, but that Butler informed him that portions of the rewritten books were erroneous in this particular and that the original books and a correct accounting would show the contrary, namely, that the corporation was indebted to Butler and Dabney. Butler told him the books were in California and Gilbane made a trip to California to obtain them. Butler informed him· that the books were in the possession of Dabney, and Gilbane was unable to find Dabney in California. In 1907 Gilbane again came to California to find the books and was again unable to locate Dabney or the books. Returning to New York, where Butler was located, he learned that Butler was in

Europe, and was unable to do anything further before 1908. In 1908 Dabney was in Europe and the books could not be located. Butler continued to represent that the original books would show the true state of the accounts of himself and Dabney with the corporation and that the corporation was largely indebted to them. Throughout 1908 Gilbane's efforts to secure further information were fruitless. In 1909 he came again to California and then saw Miley and Dabney and was told by them that none of the money obtained from the sale of any of the stock of the corporation belonged to the corporation, but that all of the stock of the corporation and all of the proceeds of the sales thereof were the property of Dabney, Miley, and Butler. The agreements hereinbefore referred to between Dabney, Miley, and Butler were then for the first time exhibited and their existence for the first time made known to Gilbane. Up to this time the existence of these agreements had been sedulously concealed from Gilbane and all the other stockholders. Shortly after this, in 1910, Gilbane disclosed to these plaintiffs the information which he had thus acquired, including his knowledge that dividends had been paid out of the capital of the corporation. Prior to this information thus received in 1910, the plaintiffs had no knowledge or suspicion of the existence of any of these facts, or of any such wrongdoing upon the part of the defendants. These plaintiffs were not amongst nor of those stockholders who induced Gilbane to make these investigations, but promptly after receiving this information from Gilbane they instituted this action, after demand upon and the refusal of the corporation so to do.

Touching the question of which provision of the statute of limitations is applicable to this action, discussion is indulged in. Unquestionably the right to prosecute this action is governed by the provisions of section 338, subdivision 4, of the Code of Civil Procedure. It is not the action contemplated by section 359 of the same code "to enforce a liability created by law." True it is that, in a sense, every liability enforceable by action is one created by law. But section 359, when it uses that phrase, is dealing with liabilities in the nature of penalties or forfeitures (*noscitur a sociis*) as is clearly disclosed by a reading of the section. This same construction was put upon the language of a like statute by

the court of New York in *Brinckerhoff* v. *Bostwick*, 99 N. Y. 190, [1 N. E. 663].

Respondents argue that from this pleading it is shown that the stockholders' alarms were excited; that they instituted inquiry and were thus put upon notice in 1906, and that this action not having been commenced until 1910, they have waited too long and relief must be denied. This contention demands again a brief consideration of this peculiar character of action. A stockholder who institutes it sues purely as a trustee to redress corporate injuries. He has the unquestioned right to sue, but it is in no sense his duty to sue. An individual stockholder may be put upon notice that his corporation has been defrauded. Indeed, complete disclosure of these facts may be made to him. He gives consideration to the time, trouble, and expense of the litigation and the loss in which he would be involved if he failed to prevail, and decides that he will not begin the suit. Some years afterward another stockholder for the first time gains knowledge of these same facts and institutes the action. It is susceptible of demonstration that the first stockholder knew of all these matters and that as to him this right of action may be barred. Is this also a bar to the prosecution of the same action by another stockholder who has acted promptly upon learning of the fraud? Clearly this cannot be so. So long as the corporation itself remains under disability and is powerless to act by virtue of the fact that its control is in the hands of a board of directors accused of participation in the frauds, the statute of limitations does not run against it. It is like the minority of an infant. His rights are not lost until he, after attaining majority, acquiesces for the prescribed time and by acquiescence affirms the acts done against his interests. So that even if it be said (and in saying it we do not decide it) that such a complaint as this shows that the plaintiff stockholder has waited too long before commencing his action, and that therefore the plea of the statute of limitations must be sustained against his action, this does not operate as a bar to the corporate rights when prosecuted by another stockholder. Otherwise we would have the anomalous and absurd condition presented of a complacent stockholder waiting for three years, pleading facts showing that his right of action was thus barred, and thus sweeping away every right of the corporation by the judgment which would have

to follow. Whatever, therefore, may have been the rights of the Providence stockholders to prosecute this action after notice, the right of these plaintiffs is not barred under their allegation that they first acquired notice and knowledge of the efforts of the Providence stockholders in 1910.

A motion is made by defendants Dabney and Miley to dismiss the appeals as to them. This motion is based upon an unusual agreement entered into between the plaintiffs and Dabney and Miley after the rendition of judgment in the trial court and appeal taken to this court. It is declared that under the circumstances it is deemed advisable that the appeals from the judgment in favor of Miley and Dabney should not be dismissed at the present time, but plaintiffs stipulate that if the appeal is sustained and the cause remanded to the trial court, "that as soon as the said cause shall be so returned to said superior court the plaintiffs shall cause their said complaint to be so amended as to eliminate any cause of action against the said Dabney and said Miley, and that the said plaintiffs will not ask said court or any court for any judgment against the said Dabney and Miley or either of them." All this is based upon a recital that "there has been a complete settlement and adjustment between the plaintiffs and defendants Miley and Dabney as to all claims of the plaintiffs against said Miley and Dabney as set forth in the plaintiffs' complaint." Herein is the extraordinary misconception of the nature of this litigation and of the rights of the plaintiffs under it, to which we have heretofore had occasion to advert in discussing their complaint. And here again it becomes necessary to call attention to the fact that these plaintiffs have no personal wrongs for which they are entitled to seek redress in this action. "The stockholder does not bring such a suit because *his* rights have been *directly* violated, or because the cause of action is *his* or because *he* is entitled to the relief sought. He is permitted to sue in this manner *simply in order to set in motion the judicial machinery of the court.*" (3 Pomeroy's Equity, 3d ed., sec. 1095.) And yet we find in this agreement the plaintiffs declaring that there has been a complete settlement and adjustment "of all claims of the plaintiffs against Miley and Dabney as set forth in plaintiffs' complaint." What is the exact situation of a plaintiff in such an action? He is a trustee pure and simple, seeking in the

name of another a recovery for wrongs that have been committed against that other. His position in the litigation is in every legal sense the precise equivalent of that of the guardian ad litem. The guardian at litem stands as the representative of some person incompetent to sue or be sued directly. He is appointed by the court to represent that incompetent's interests; to prosecute or defend with the highest diligence and good faith. The stockholder beginning this action does not even occupy the position of a creditor suing on his own account and on account of his fellow-creditors. In the latter case the creditor plaintiff has a direct personal interest in the litigation, and within limitations not here necessary to discuss, may deal with that litigation as his own. But the stockholder acts in purely a representative capacity. He is a guardian ad litem by virtue of statutory authority, empowered to do precisely what a guardian ad litem appointed by a court may do. He has gone into equity seeking redress for a corporation under disability to obtain relief itself, precisely as the guardian ad litem goes into court to obtain like redress for a client under disability by reason of incompetency or nonage. The principles governing the conduct of a guardian ad litem are in full strictness applicable to the conduct of such a plaintiff stockholder. Not only should a plaintiff in such a fiduciary capacity be willing to take no act that did not first receive the sanction of the court of equity to which he has appealed, but, more than this, he is not permitted to take any act without such sanction. (Waterman v. Lawrence, 19 Cal. 210, [79 Am. Dec. 212].) Where an action is prosecuted by a guardian ad litem, the infant is the real party. (Bowers v. Kanaday, 94 Ga. 209, [21 S. E. 458].) And the guardian ad litem cannot even be considered a party to the cause. (Thomason v. Gray, 84 Ala. 559, [4 South. 394]; Baltimore & Ohio R. R. Co. v. Fitzpatrick, 36 Md. 619; Tate v. Mott, 96 N. C. 19, [2 S. E. 176]; Duffy v. Pinard, 41 Vt. 297; Ingram v. Little, L. R. 11 Q. B. Div. 251.) And what are the principles governing the conduct of a guardian ad litem? It is the right and duty of the court to protect the interests of the incompetent represented by the guardian ad litem and to exercise supervision over the conduct of that guardian. (Hutchinson v. McLaughlin, 15 Colo. 492, [11 L. R. A. 287, 25 Pac. 317]; Lloyd v. Kirkwood, 112 Ill. 329; Hauly v. Crozier, 14 La. Ann. 304; Revely v. Skinner, 33 Mo.

98; *Newland* v. *Gentry,* 18 B. Mon. (Ky.) 666; *Alling* v. *Alling,* 52 N. J. Eq. 92, [27 Atl. 655]; *Moore* v. *Moore,* 4 Sand. Ch. (N. Y.) 38; *Richards* v. *East Tennessee etc. R. R. Co.,* 106 Ga. 614, [45 L. R. A. 712, 33 S. E. 193].)· "The court must be satisfied that the incompetent has had a full opportunity to have his day in court by a proper and suitable guardian, and should see, notwithstanding any admission of facts even by such guardian, that his rights are not sacrificed." (22 Cyc. 632; *Austin* v. *Charlestown Female Sem.,* 8 Met. (Mass.) 198; *Bloom* v. *Burdick,* 1 Hill (N. Y.), 130, [37 Am. Dec. 299]; *United States Bank* v. *Ritchie,* 8 Pet. (U. S.) 128, [8 L. Ed. 890].) The court and not the guardian *ad litem* has the power to compromise the rights of minors under suitable circumstances. So far, therefore, as this motion to dismiss is concerned, it is not even properly before this court for consideration. It is based upon the composition agreement above adverted to. That composition agreement is cognizable by the trial court alone and will not be given the slightest efficacy until, after scrutiny and examination, it shall be determined by that court that the corporation's rights are fully protected.

It follows that the motions of defendants Dabney and Miley to dismiss the appeals so far as they are concerned should be and are denied, and they will address to the trial court whatever application for relief they may think they are entitled to under their agreement with plaintiffs.

A motion has been made to substitute other attorneys for the attorney of record of the corporation. Opposing affidavits are filed upon the motion. It has already been said that the judgment of the trial court must be reversed. This reversal opens the case to the full equity jurisdiction of the trial court. The motion for substitution can the better be made and determined there, and is here denied without prejudice to its renewal in the trial court. The same disposition is made of the motion to substitute the corporation in the place of the plaintiffs and intervener. This motion may be renewed before the trial court, which will grant or decline to grant it, with due regard to the direct rights of the corporation itself and to the indirect rights of its stockholders.

Finally, intervener appellant complains of an award made against him for costs arising before he was connected with the litigation. It was unquestionably erroneous for the court to

have awarded costs against the intervener, which costs accrued before he connected himself with the litigation. (*Railsback v. Patton*, 34 Neb. 492, [52 N. W. 277].) The discretionary power of the court in the matter of these costs does not go to the extent here exercised.

The judgments appealed from are therefore reversed, the motions denied, and the causes remanded.

Lorigan, J., and Melvin, J., concurred.

Hearing in Bank denied.