**DENICKE et al. v. ANGLO CALIFORNIA NAT. BANK OF SAN FRANCISCO et al.**

No. 10329.

Circuit Court of Appeals, Ninth Circuit.

March 1, 1944.

Rehearing Denied April 7, 1944.

Aaron M. Sargent, of San Francisco, Cal., for appellant.

Frederick M. Fisk, Donald Y. Lamont, Chickering & Gregory, all of San Francisco, Cal., for appellee Anglo California Nat. Bank.

Brobeck, Phleger & Harrison, of San Francisco, Cal., for appellee R. S. Dollar.

Edwin V. McKenzie and J. H. Sapiro, both of San Francisco, Cal., for appellee Victor Klinker.

Theo. J. Roche and Sullivan, Roche, Johnson & Farraher, all of San Francisco, Cal., for appellees Mortimer Fleishhacker and Mortimer Fleishhacker, Jr.,

Felix T. Smith, Francis R. Kirkham, Pillsbury, Madison & Sutro, all of San Francisco, Cal., for appellee Irene L. Heyes.

Before MATHEWS, STEPHENS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

This appeal is from a judgment in a derivative suit (entered pursuant to Rule 23(c) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c) approving a compromise and directing a dismiss-

al. An appeal was taken also from an order denying a motion to vacate the judgment.

The record comprises almost 2,000 printed pages and the briefs are very long, but the questions presented are relatively simple. The suit was filed in November 1938 by appellant Denicke,[1] a stockholder ot appellee Anglo California National Bank (herein for brevity called the Bank.) At the time of the hearing on the petition for compromise in March of 1942 there was on file a second amended complaint containing eight counts,[2] the first of which concerned alleged derelictions of appellees Mortimer Fleishhacker and Herbert Fleishhacker, former directors and chief executive officers of the Bank. The second count was against the same defendants and several other parties with whom it was alleged the Fleishhackers had conspired to cause the making of illegal or fraudulent Bank loans. The remaining counts set up claims against other directors based on the transactions covered by the first two counts and asserting that these directors had substantially abdicated their functions in favor of the Fleishhackers, to the consequent loss of the Bank. The total recovery sought against the several defendants was in excess of five million dollars. As the reason for the institution of the stockholder's suit it was alleged that the Bank directorate was dominated by adverse interests to the extent that it was impossible to obtain appropriate action to enforce the claims sued upon. Federal jurisdiction was predicated on 12 U.S.C.A. §§ 93 and 503, imposing personal liability upon officers and directors where loss is sustained through violation of the national banking laws.[3]

The Bank itself did not plead to the complaint. Some months after the suit was filed (on April 1, 1939, to be specific) the management underwent a change, so that individuals unconnected with the litigation were brought into active charge of the institution's affairs.[4] There is evidence that the new management carried on an extensive investigation of the claims asserted in the suit, and there were negotiations both with appellant Denicke and with the defendants looking toward a compromise of the litigation. Another derivative suit brought by Denicke on the Bank's behalf, apparently against the same parties, was pending before Judge Roche, the instant case being on the calendar of Judge St. Sure. Denicke was represented in both suits by the same attorney. The Bank received written offers from the defendants in the two suits to pay the sum of $350,000 in full settlement of the claims, and on July 1, 1941, it presented a petition under Rule 23(c) to obtain court approval of the settlement proposed to be made for that sum. The offers in question had previously been submitted to and unanimously approved by the Bank's executive committee and by its board of directors; and at a special meeting of the shareholders, called for that purpose and held July 7, 1941, the action of the board in accepting the compromise offer was ratified by a vote of more than 95% of the total outstanding stock.[5]

Following this action the two trial judges jointly heard the petition to compromise. The hearing extended over a period of nine days, during which time numerous witnesses were examined and a large amount of documentary evidence was introduced. Among those testifying were the Bank's president, its first vice president, and Mr. Mortimer Fleishhacker. In January 1942 the judges denied the petition "without prejudice to the filing by said Bank, if so advised, of separate offers of compromise in each of the actions." Thereafter separate offers, in the amount of $200,000 in each suit, were received by the Bank. In the companion action

---

[1] The other appellant, Mary E. Doble, sought to intervene in the action at the time of the filing of the petition to compromise, and later appeared in response to an order to show cause directed to all the shareholders.

[2] The second amended complaint had been further supplemented by two additional counts.

[3] The statutes claimed to have been violated are 12 U.S.C.A. §§ 83, 84, 375a and 595.

[4] There had been earlier derivative suits by other Bank stockholders against Herbert Fleishhacker which had terminated in the entry of large judgments against that officer. Blum v. Fleishhacker, D.C., 21 F. Supp. 527; Fleishhacker v. Blum, 9 Cir., 109 F.2d 543; Anglo California Nat. Bank of San Francisco v. Lazard, 9 Cir., 106 F.2d 693.

[5] At the shareholders' meeting appellants' attorney participated in the discussion and read a prepared statement in opposition to the resolution ratifying the proposed compromise.

pending before Judge Roche this offer was accepted by the Bank, had court approval, and there was no appeal.

In the case before us, after notice to all stockholders, a hearing, eventuating in the judgment appealed from, was had on March 31, 1942, on the Bank's petition to compromise and terminate the litigation. Written objections of appellants had previously been filed, and a pretrial conference had been held. It was stipulated that the record and proceedings had in the hearing on the previous petition be considered as evidence in the matter along with the oral arguments and briefs then before the court. Little additional evidence was offered at the hearing, and that in support of the petition. Upon being asked if he was "through," counsel for appellants moved for a nonsuit or denial of the petition. The purpose of this motion, as stated in appellants' brief here, was "to avoid the necessity of offering further proof." The motion was not ruled on, and the court continued the matter to a later time on the assumption that the case on the petition had been submitted. It is contended that the only matter presented for decision was the motion for nonsuit, and that the case as predicated on the Bank's petition was not finally submitted at this hearing. In substance, the argument appears to be that appellants were not given the opportunity of making a full showing in opposition to the compromise proposal.

However, no proffered evidence was rejected by the court. As already noted, there had been a very extensive hearing the previous July. A great mass of evidence had been assembled by appellants' attorney and was before the court or available for submission. Numerous interrogatories had been propounded and answered. And in the period of three and a half years elapsing since the commencement of the suit there had been ample time in which to make use of the various forms of discovery available under the Rules of Civil Procedure. Discovery proceedings had been freely resorted to and no requests for discovery had been denied by the court. The answers of the various defendants were on file, and the main case had long been at issue. It is true that in the course of his argument on the motion for nonsuit appellants' counsel stated that there was a good deal of additional evidence that he had or was assembling, but he added that "rather than take up the time with a detailed hearing on this matter, the petition now pending ought to be denied. The record shows enough to sustain such an order, and that the case continue." Counsel wished, he said, "to reserve the right to introduce evidence in rebuttal at a later date." The court observed that it did not want to hear more evidence and would prefer to have it understood that the petition was being submitted on the evidence adduced; to which appellants' attorney replied that he would "submit the matter on the showing made, on the arguments I have made, and on the briefs already on file." We see in all this no sufficient reason for believing that appellants were deprived of their day in court.

After the hearing appellants' attorney continued his investigations and took a number of additional depositions, none of which was offered or received in evidence. On June 29, 1942, the court entered an order denying appellants' objections and granting the petition of the Bank. Simultaneously the court filed a written opinion reviewing the case at much length. This was followed on July 2, 1942, by a formal judgment approving the compromise and authorizing a dismissal with prejudice upon the Bank's receiving the sum of $200,000. The sum was paid and the case dismissed.

There were no separate findings, but a number of findings are incorporated in the judgment. It was found that the Bank and its representatives, in seeking approval of the compromise proposal, had acted in good faith and for the best interests of the shareholders; that the objections made by appellants were without merit; and that it is for the best interests of the Bank and its shareholders that the suit be finally terminated upon receipt of the offered sum.

We see no clear error in these findings. It appeared that Herbert Fleishhacker, the defendant said to have been the beneficiary of the illegal transactions, was in bankruptcy, and there was no possibility of realizing from his estate more than a part of the judgments that had been obtained against him in the earlier secondary suits. Nothing was to be gained by pursuing him further. Following a recapitalization of the Bank, Mortimer Fleishhacker had paid in the sum of $2,590,000 on account of loans in which he had been interested. He and

the other former directors were vigorously contesting liability on the merits and on other grounds, including the statute of limitations. Appellants claim that they had adduced sufficient evidence to make out at least a prima facie case of liability for much larger amounts than those offered, but neither of the trial judges was greatly impressed by the showing.

Under all the circumstances we think it was primarily for the shareholders and the presently constituted authorities of the Bank, acting in good faith, to determine whether the best interests of that institution did not lie in the course they asked leave to follow. Cf. Hawes v. Oakland, 104 U.S. 450, 462, 26 L.Ed. 827. Out of more than a thousand shareholders only two, and those the appellants,[6] objected to the compromise. Mr. Thompson, the president, in addition to testifying that the offer was thought advantageous in itself, advanced other reasons for believing that a continuance of the already protracted litigation would be highly detrimental to the Bank. He dwelt on imponderables of peculiar importance to a banking institution— the difficulty of differentiating in the popular mind between the events of today and those presently under discussion relating to other days, the need of preserving the morale of employees and the goodwill of important customers, the decline in prestige and the loss of public confidence in a bank whose name in constantly in the public eye in connection with litigation of this character.

Appellants insist that the court lacked power to terminate the suit without their consent. Rule 23 of the Rules of Civil Procedure affords no ground for that view, and the California authorities, at least, are to the contrary. It is the rule in that state that the stockholder is permitted to sue "simply in order to set in motion the judicial machinery of the court." Whitten v. Dabney, 171 Cal. 621, 630, 154 P. 312, 316, quoting 3 Pomeroy's Equity, 3d Ed., § 1095. His position in the litigation is assimilated to that of a guardian ad litem with power in the court, not in the stockholder, to compromise the rights of the real party in interest, which is the corporation itself, Whitten v. Dabney, supra; Loeb v. Berman, 217 Cal. 716, 20 P.2d 685; Russell v. Weyand, 5 Cal.App.2d 259, 42

P.2d 381. We are not aware of any federal law to the contrary, and in the present circumstances we think it appropriate if not obligatory on us to apply the local rule.

We need not stop to inquire whether the order denying appellants' motion to vacate the judgment was appealable, for the opinion already sufficiently indicates our view that appellants had ample time and a reasonable opportunity to present a full showing in opposition to the compromise. We find no merit in other points argued.

Affirmed.

---

6 Denicke owned 1,600 shares of the common stock of the Bank and Doble 1,752 shares, out of a total of 410,000 shares of common and 1,925,000 shares of preferred outstanding.