Filed 6/20/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| DONALD NORMAN,<br><br>        Plaintiff and Appellant,<br>v.<br>PATRICK STRATEMAN et al.,<br><br>        Defendants and Respondents,<br>and<br>INTERSANGO LLC, et al.,<br><br>        Nominal Defendants. | A170356<br><br>(City & County of San Francisco<br>Super. Ct. No. CGC-17-556483) |

Plaintiff Donald Norman, defendant Patrick Strateman (Patrick), and Amir Taaki established Intersango, a start-up cryptocurrency exchange. After Intersango was shuttered, Norman filed a derivative complaint on behalf of Intersango against Patrick and Jamie Strateman (jointly, the Stratemans) and Taaki.

Over a year after the parties entered into a settlement agreement, Norman filed a motion to set aside the settlement, and the Stratemans filed a motion to enforce the settlement. The trial court granted the motion to enforce, denied the motion to set aside, and entered judgment dismissing the parties' claims pursuant to the settlement agreement. Norman now appeals from that judgment and related order, claiming the trial court erred in concluding the settlement agreement had been judicially approved and was

1

enforceable.  We agree and remand for the trial court to conduct the necessary judicial review of the settlement.

## FACTUAL AND PROCEDURAL BACKGROUND

Patrick asserts Intersango faced numerous legal and financial liabilities, while Norman asserts the company was successful and growing. Regardless of the accuracy of their respective assertions, it is undisputed that Patrick eventually closed Intersango's bitcoin exchange.

The derivative complaint alleged that Patrick excluded Norman and Taaki from Intersango's operations, closed the company's bitcoin exchange without their consent, and retained Intersango's assets for his benefit while refusing to return customers' bitcoins.  These claims formed the basis for seven causes of action: (1) breach of fiduciary duty; (2) aiding and abetting breach of fiduciary duty; (3) conversion; (4) aiding and abetting conversion; (5) unjust enrichment; (6) accounting; and (7) concealment.  The complaint sought compensatory damages, restitution, a court-supervised accounting, imposition of a constructive trust over Intersango's bitcoin and other assets, injunctive relief, punitive damages, attorneys' fees, costs, and interest.

In response, Patrick filed a derivative cross-complaint against Norman, alleging Norman abdicated his duties as CEO of Intersango and liquidated an Intersango bank account for his own benefit.  The cross-complaint asserted claims for breach of fiduciary duty, conversion, unjust enrichment/restitution, and accounting.

During trial, the parties participated in settlement negotiations at the recommendation of the trial judge, Judge Rochelle East.  Norman and the Stratemans entered into a settlement of all claims and cross-claims against each other.  Judge Harold Kahn, the settlement judge, had the parties recite the terms of the settlement on the record.  All parties confirmed their

2

agreement to the terms of the settlement, represented they did not have any questions and had the opportunity to confer with counsel, and acknowledged the settlement would be immediately enforceable. Neither party requested the court include any additional information on the record, apart from retaining jurisdiction to resolve future disputes.

The parties informed Judge East of their settlement, and the court adjourned trial. The court also set an order to show cause (OSC) hearing regarding dismissal pursuant to the settlement.

Norman later sought to continue the OSC hearing because the parties were still finalizing a written agreement formalizing the terms of the settlement. The Stratemans objected, noting that there was no basis for any delay because "the Parties entered into a binding settlement agreement and put the terms on the record before Judge Kahn," "that settlement agreement is reflected in a final, binding transcript," and "there are no claims or cross-claims left to prosecute."

Norman eventually altered his justification for delaying dismissal of the action from needing a written settlement to opposing the settlement entirely. Norman filed a motion "to confirm absence of an enforceable settlement in derivative action and/or in the alternative, to set aside settlement on various grounds." He argued a derivative lawsuit settlement cannot be enforced without judicial approval, and the court had not provided such approval. Norman further asserted the settlement should be set aside due to (1) Patrick's false promise to return customer funds, and (2) Patrick's position that only certain customer funds were subject to the settlement.

In response, the Stratemans filed a motion to enforce the settlement agreement, arguing the settlement terms were explicitly defined, and the

3

parties understood and agreed to be bound by those terms. They requested the court enter judgment on the settlement agreement and dismiss the case.

At the subsequent hearing, Norman argued that any derivative litigation settlement required judicial approval. Norman argued a motion for judicial approval must be filed, and he was entitled to oppose the motion and argue that the interests of Intersango and its customers were not being protected. Norman conceded this issue was not raised at the time the settlement was placed on the record, stating, "I think everyone forgot it was a derivative litigation."

The trial court (Judge East) granted the motion to enforce the settlement. The court explained "the transcript does not indicate that anyone made any objection at the time [of the settlement] or requested that something be put in more detail on the record." The court further noted derivative lawsuits are designed "to protect shareholders," all three of the Intersango shareholders "were parties to the lawsuit," and "[s]o in terms of protecting the shareholders, that settlement agreement clearly goes right to that issue."[1] The court further concluded that the purpose of the settlement was to protect and return customer assets, and "those are the terms that are in the [settlement] agreement." The court explained that if the Stratemans failed to return customer assets pursuant to the settlement, the remedy "is to enforce the agreement not to necessarily set it aside."

The court then denied the motion to set aside the settlement. It acknowledged Norman may now wish he added additional terms, such as an audit, but "in terms of the pace and the fact of refunding customers," those

---

[1] We note one of the shareholders, Taaki, did not participate in the litigation or the settlement negotiations, although he was a named defendant in Norman's complaint.

4

issues are "all addressed in this agreement, and those things can be addressed as may be needed going forward with the settlement agreement." The court noted the parties, including Norman, stated they did not have any questions regarding the settlement terms, they had the opportunity to consult with their attorneys, and they understood there was "no room for buyer's remorse." The court concluded, "So it is clear to me reading the transcript of this settlement agreement that all of the parties understood . . . what the terms were and what it was that they were agreeing to and that it was indeed immediately enforceable."

The court entered judgment and dismissed the claims and cross-claims with prejudice. Norman timely appealed.

**DISCUSSION**

On appeal, Norman argues the settlement required court approval because it resolved derivative claims, the settlement was never approved, and the trial court erred in enforcing the settlement and entering judgment. Norman further asserts the trial court ignored evidence that Patrick did not intend to return customer funds as required by the terms of the settlement.

## I. Whether Norman Asserted Individual or Derivative Claims

As an initial matter, the Stratemans contend judicial approval was not required because while "the parties filed derivative actions, in substance, the case proceeded as a direct action." Norman "pursued a direct claim to receive one third of Intersango's 2012 Bitcoin assets" and focused on Intersango's division of revenue between the three shareholders.

### A. Relevant Legal Principles

A corporation is a legal entity distinct from its shareholders. (*Merco Construction Engineers, Inc. v. Municipal Court* (1978) 21 Cal.3d 724, 729.) "Because a corporation exists as a separate legal entity, the shareholders

5

have no direct cause of action or right of recovery against those who have harmed it. The shareholders may, however, bring a derivative suit to enforce the corporation's rights and redress its injuries when the board of directors fails or refuses to do so." (*Grosset v. Wenaas* (2008) 42 Cal.4th 1100, 1108 (*Grosset*); *Desaigoudar v. Meyercord* (2003) 108 Cal.App.4th 173, 183.) If a derivative action succeeds, "the corporation is the only party that benefits from any recovery; the shareholders derive no benefit ' "except the indirect benefit resulting from a realization upon the corporation's assets." ' " (*Grosset,* at p. 1108)

In *Jones v H.F. Ahmanson & Co.* (1969) 1 Cal.3d 93, the California Supreme Court distinguished between individual and derivative actions. An action " 'is derivative, i.e., in the corporate right, if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock and property without any severance or distribution among individual holders, or it seeks to recover assets for the corporation or to prevent the dissipation of its assets.' " (*Id.* at p. 106.) The court further explained "the stockholders derive no benefit [from the derivative litigation] except the indirect benefit resulting from a realization upon the corporation's assets." (*Id.* at p. 107.) Conversely, "[i]f the injury is not incidental to an injury to the corporation, an individual cause of action exists." (*Ibid.*)

Plaintiffs are not limited to a single remedy; "it is settled that one who has suffered injury both as an owner of a corporate entity and in an individual capacity is entitled to pursue remedies in both capacities." (*Denevi v. LGCC, LLC* (2004) 121 Cal.App.4th 1211, 1221.)

6

### B. *Analysis*

Here, the allegations in the complaint fall into two main categories: Patrick's failure to properly manage Intersango and his failure to return Intersango's assets (i.e., bitcoin) to its members.

As to the first category, the complaint alleged Patrick: (1) excluded Norman and Taaki from Intersango's day-to-day business and operations; (2) closed Intersango's only revenue source, its bitcoin exchange platform; (3) failed to explore options for selling Intersango's assets while they retained value; (4) stopped accepting new customer registrations, which ensured Intersango would not generate income; (5) unilaterally dissolved Intersango in breach of his fiduciary duties to Intersango; (6) used company assets to fund personal expenses and pay himself an excessive salary; and (7) delegated company authority to Ms. Strateman without Norman's or Taaki's consent. The complaint alleged an accounting would demonstrate Intersango had sufficient funds to both continue operations and expand, and it had significant profits and a strong market position.

The complaint also focused on Patrick's failure to pay Norman his share of Intersango's assets. The complaint asserted Norman repeatedly requested Patrick distribute to Norman one-third of Intersango's assets, Norman provided Patrick with a notarized document identifying the amount of bitcoin that would satisfy Norman's claim to Intersango's assets, and Patrick failed to distribute any of Intersango's assets to Norman.

Based on these allegations, there is no doubt Norman alleged derivative claims. The first category of allegations involves Patrick's alleged mismanagement of Intersango, including self-dealing using Intersango's assets and a failure to monetize Intersango's assets. (See *Avikian v. WTC Financial Corp.* (2002) 98 Cal.App.4th 1108, 1115, fn. omitted ["[A]ppellants'

7

core claim is that defendants mismanaged World, and entered into self-serving deals to sell World's assets to third parties. Those assertions—both the improper selling and purchasing of assets—amount to a claim of injury to World itself."].) While the second group of allegations could arguably be separate individual claims, arising only after Patrick ceased Intersango's operations, issues regarding repayment to members and the amount of that repayment also could been seen as incidental to the corporate injury. (*Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 124 ["[A]n individual cause of action exists only if the damages were not *incidental* to an injury to the corporation"].)

We need not resolve whether Norman raised both individual and derivative claims. At a minimum, the first category of claims is undisputably derivative in nature. Because the settlement purported to settle *all* claims between the parties, the derivative claims were part of that settlement and, as discussed below, required judicial approval.

In addition, we note the complaint satisfied the requirements for bringing a derivative action under Corporations Code section 800. Derivative actions may only be initiated if a shareholder meets certain procedural requirements: "(1) The plaintiff alleges in the complaint that plaintiff was a shareholder . . . at the time of the transaction or any part thereof of which plaintiff complains . . . ; and [¶] (2) The plaintiff alleges in the complaint with particularity plaintiff's efforts to secure from the board such action as plaintiff desires, or the reasons for not making such effort, and alleges further that plaintiff has either informed the corporation or the board in writing of the ultimate facts of each cause of action against each defendant or delivered to the corporation or the board a true copy of the complaint which plaintiff proposes to file." (Corp. Code, § 800, subd. (b).)

8

Here, the complaint alleged Norman was a member of Intersango during the Stratemans' wrongful conduct. Norman further asserted that demanding Intersango file suit against Patrick "would be futile" because Patrick and Taaki both face personal liability based on their actions and "Taaki is dominated by [Patrick]." The complaint states Taaki refused to discuss Patrick's actions or otherwise assist Norman in confronting Patrick.

## II. Judicial Approval of the Settlement

Norman asserts neither Judge Kahn—in his role as settlement judge—nor Judge East—in ruling on the parties' motions—properly reviewed or approved the settlement.

### A. Relevant Legal Principles

A shareholder plaintiff in a derivative action must obtain court approval before settling and dismissing the corporation's cause of action. (*Gaillard v. Natomas Co.* (1985) 173 Cal.App.3d 410, 419, overruled on other ground by *Grosset, supra*, 42 Cal.4th 1100 ["California courts have found that shareholder derivative plaintiffs may be considered as trustees or guardians ad litem to the corporation's right of action" and "[s]uch plaintiffs have no power to settle or compromise the corporation's action absent court approval."]; *Whitten v. Dabney* (1915) 171 Cal. 621, 631–632; *Ensher v. Ensher, Alexander & Barsoom, Inc.* (1960) 187 Cal.App.2d 407, 410.) " 'The principles governing derivative actions in the context of corporations apply to limited liability companies.' " (*Sirott v. Superior Court* (2022) 78 Cal.App.5th 371, 381.)

In a process similar to class action settlements, courts must ensure that derivative settlements are fair and reasonable to the corporation and its shareholders, and the settlements are not a product of fraud, overreaching, or

9

collusion by the settling parties.[2]  (*Robbins v. Alibrandi* (2005) 127 Cal.App.4th 438, 449 (*Robbins*); cf. *Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794, 1800–1801 (*Dunk*) [class action].)  In so doing, court approval serves to protect the interests of those who are not directly represented in the settlement negotiations.  (*Robbins*, at p. 449.)  The trial court also should give "[d]ue regard . . . to what is otherwise a private consensual agreement between the parties."  (*Dunk*, at p. 1801.)

" 'Ultimately, the [trial] court's determination is nothing more than "an amalgam of delicate balancing, gross approximations and rough justice." ' "  (*Dunk*, *supra*, 48 Cal.App.4th at p. 1801.)  At the same time the trial court needs to operate under an initial presumption of fairness where the settlement is the result of arm's-length negotiation, the investigation and discovery are sufficient to permit counsel and the court to act intelligently,

---

[2] Courts have adopted the class action settlement approval process in other contexts where court approval of a settlement is required.  For example, actions brought under the Labor Code Private Attorneys General Act of 2004 (Lab. Code, § 2698 et seq.; PAGA) require courts to "review and approve" settlements, but the statute does not provide a process for such review.  (Lab. Code, § 2699.)  Accordingly, courts have applied the "fair, reasonable, and adequate" standard from class action settlements.  (*Moniz v. Adecco USA, Inc.* (2021) 72 Cal.App.5th 56, 76 (*Moniz*), disapproved on other ground in *Turrieta v. Lyft, Inc.* (2024) 16 Cal.5th 664.)  "Because many of the factors used to evaluate class action settlements bear on a settlement's fairness— including the strength of the plaintiff's case, the risk, the stage of the proceeding, the complexity and likely duration of further litigation, and the settlement amount—these factors can be useful in evaluating the fairness of a PAGA settlement."  (*Moniz*, at pp. 76–77; see *Kullar v. Foot Locker Retail, Inc.* (2008) 168 Cal.App.4th 116, 133 (*Kullar*) [as with class settlement approvals, the trial court "must . . . receive and consider enough information about the nature and magnitude of the claims being settled, as well as the impediments to recovery, to make an independent assessment of the reasonableness of the terms to which the parties have agreed."].)

10

the counsel are experienced in similar litigation, and the percentage of objectors is small.  (*Id*. at p. 1802.)

Our task on appeal is not to reweigh those factors or substitute our own notions of fairness for those of the trial court.  Rather, we only determine whether the record shows an abuse of discretion. (*Dunk, supra*, 48 Cal.App.4th at p. 1802; cf. *Cellphone Termination Fee Cases* (2010) 186 Cal.App.4th 1380, 1389 (*Cellphone Cases*).)  "A trial court's failure to exercise discretion is itself an abuse of discretion."  (*Fadeeff v. State Farm General Ins. Co.* (2020) 50 Cal.App.5th 94, 104 (*Fadeeff*).)

### B.  The Court Did Not Adequately Review and Approve the Settlement

Norman contends Judge Kahn did not approve the terms of the settlement; rather, those terms were only memorialized before him.  Norman further asserts Judge East's analysis of the settlement as part of the parties' motions also was inadequate.  We agree.

While Judge Kahn was involved in mediating the settlement, the record does not indicate Judge Kahn conducted an independent review of the settlement or provided the necessary court approval.  Instead, the record only reflects the parties' agreement and approval of the settlement.  The parties confirmed the terms of their agreement, their understanding of the agreement, and that they had an opportunity to confer with counsel.  The parties also acknowledged the agreement was immediately enforceable, stated they did not have any questions, and represented nothing further needed to be placed on the record apart from retaining jurisdiction for future disputes.

The Stratemans claim Judge Kahn would not have retained jurisdiction for future disputes "if he did not approve the settlement agreement."  But

11

such an argument is pure speculation, unsupported by any evidence. The parties' consent to, and acknowledgement of, the settlement cannot replace the court's duty to review and approve the settlement. Here, there is no evidence that Judge Kahn conducted a separate evaluation of whether the settlement was fair and reasonable and not the product of fraud, overreaching, or collusion by the settling parties.[3] (See *Robbins*, *supra*, 127 Cal.App.4th at p. 449.)

Nor did Judge East review and approve the settlement as part of her order denying Norman's motion to set aside the settlement and granting the Stratemans' motion to enforce the settlement. While the court briefly acknowledged the issue of judicial approval, it did not expressly approve the settlement or find that Judge Kahn approved the settlement. Rather, the court simply noted that no one objected or requested further review at the time the settlement was recorded, and "there is no magic word that is required with regard to a settlement." The court then stated that the purpose of derivative lawsuits is to protect the shareholders, all three shareholders of Intersango were parties to the lawsuit, and thus the settlement addressed "that issue."

While Judge East acknowledged one key component of judicial approval—protecting absent shareholders—the record does not reflect that

---

[3] The Stratemans cite *Westwood Temple v. Emanuel Center* (1950) 98 Cal.App.2d 755 to argue that Judge Kahn's participation in the settlement negotiations was sufficient to indicate he understood the significance of the issues and the meaning of the dismissal. We do not find that case persuasive as that matter does not appear to have been brought as a derivative action, and the court failed to cite any authority for its proposition that judicial participation at a receivership hearing would satisfy the review and approval process. Moreover, more recent authority, cited herein, describe what factors courts should consider when approving such settlements, none of which were mentioned in *Westwood*.

she independently assessed whether the settlement was fair and reasonable by considering other relevant factors. Courts should consider all relevant factors, "which may include, but are not limited to ' "the strength of [the] plaintiffs' case, the risk, expense, complexity and likely duration of further litigation, the risk of maintaining class action status through trial, the amount offered in settlement, the extent of discovery completed and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant, and the reaction of the class members to the proposed settlement." ' " (*Cellphone Cases*, *supra*, 186 Cal.App.4th at p. 1389.)

For comparison, in *Dunk*, *supra*, 48 Cal.App.4th 1794, the Fourth District Court of Appeal concluded the trial court did not abuse its discretion in approving the class action settlement because: (1) "[t]he case was over three years old when it settled"; (2) "[e]xtensive discovery and pretrial litigation, including a demurrer and motion for summary judgment, had been conducted"; (3) "[p]laintiffs' experienced attorneys had learned the alleged defect did not affect the vehicles' crashworthiness"; (4) the defect did not cause any "instance of personal injury" and, at most, "caused a poor door fit, resulting in some water leakage, wind noise, and minor cosmetic damage, such as paint chipping"; (5) "[t]he maximum damages to each member of the plaintiff class was $600," and the settlement amount of $400 "represented two-thirds of that amount"; (6) the number of objectors were small in comparison to the entire class; (7) both parties' counsel "believed there were statute of limitation and other potential problems that would negatively impact the chances of recovery"; (8) "[t]he independent mediator, a retired superior court judge and appellate justice with substantial experience and respect in the legal community, recommended the settlement"; and

13

(9) "[v]oluminous pleadings were filed in support of and in opposition to the settlement, and the trial court reviewed the extensive court file and heard oral argument." (*Id.* at pp. 1802–1803.) The appellate court thus found "the record was ideal for the trial court to make a rational and educated determination the settlement was fair, adequate and reasonable." (*Id.* at p. 1803.)

Here, the record is silent as to many of these considerations, including whether the court conducted any evaluation of the strength of the parties' claims or any potential recovery. Moreover, the trial court did not benefit from specific briefing—let alone the "voluminous" briefing in *Dunk*—regarding whether the settlement was fair and reasonable.[4] Because the settlement proposed a substantial monetary payment to Norman, judicial review is particularly necessary to ensure the settlement is fair and reasonable to the corporation and other shareholders.[5]

---

[4] To the extent Norman's motion to set aside the settlement addresses the terms of the settlement, it only addresses the alleged falsity of Patrick's promise to return customer funds. The question of Patrick's compliance with the terms of the settlement is distinct from the question of whether the settlement is fair and reasonable.

[5] Both parties acknowledge Intersango was not separately represented by counsel in the proceedings and settlement negotiations. In evaluating the settlement and Intersango's ability to be a party thereto, the trial court should also consider whether Intersango was adequately represented. (E.g., *CLD Construction, Inc. v. City of San Ramon* (2004) 120 Cal.App.4th 1141, 1145 ["[U]nder a long-standing common law rule of procedure, a corporation, unlike a natural person, cannot represent itself before courts of record in propria persona, nor can it represent itself through a corporate officer, director or other employee who is not an attorney. It must be represented by licensed counsel in proceedings before courts of record."]; *Blue Water Sunset, LLC v. Markowitz* (2011) 192 Cal.App.4th 477, 491 ["The limited liability companies may wish to take an active role in the litigation. If so, the weight of authority indicates that the limited liability companies must obtain independent counsel."]; *Gong v. RFG Oil, Inc.* (2008) 166 Cal.App.4th 209,

While trial court orders are generally presumed correct and error must be affirmatively shown (*Bowser v. Ford Motor Co.* (2022) 78 Cal.App.5th 587, 610), here the trial court did not recognize the scope of its obligation to ensure the settlement was fair and reasonable. (*Fadeeff, supra*, 50 Cal.App.5th at p. 104 ["A trial court's failure to exercise discretion is itself an abuse of discretion."].) Accordingly, remand is appropriate for the court to consider in the first instance whether the settlement is fair and reasonable and not the product of fraud, overreaching or collusion, and all shareholders should be provided notice of such hearing to the extent practicable.[6] The court may wish to assess, among other considerations, whether Intersango was properly represented, what Intersango assets exist, and what may constitute a fair and reasonable distribution of those assets between any outstanding Intersango debts or other obligations and its shareholders.

### C. Harmless Error

The Stratemans argue any failure by the trial court to approve the settlement constitutes harmless error. But they fail to cite any authority in which courts have applied a harmless error analysis to a derivative claim settlement. Nor are we aware of any.

Because the approval process for a derivative claim settlement is similar to that for a class action, class action settlements provide a useful

---

215 ["[I]n a derivative suit, the organization named as a defendant is actually a plaintiff and case law forbids dual representation in a derivative suit alleging fraud by the principals, because the principals and the organization have adverse, conflicting interests."].)

[6] We acknowledge concerns about fairness to other shareholders or notice may be less pressing in this matter because all shareholders were named parties in the lawsuit. However, these details do not negate the importance of courts following the appropriate procedural steps to review and approve derivative claim settlements.

analogy in evaluating harmless error. And courts "generally do not employ 'a harmless error standard for class action settlement review.' " (*Saucillo v. Peck* (9th Cir. 2022) 25 F.4th 1118, 1133 (*Saucillo*); *In re Volkswagen "Clean Diesel" Marketing Litig.* (9th Cir. 2018) 895 F.3d 597, 613 (*Volkswagen*).) Courts have only found harmless error related to judicial approval of class action settlements in limited circumstances, such as when the error does not involve the court's oversight or a substantive deficiency in the settlement. (Compare *Volkswagen*, at pp. 612–613 [court's failure to respond to objection harmless because "the objector's complaint appear[ed] to be purely technical"] with *Saucillo*, at p. 1133 ["presumption that the settlement was 'the product of a non-collusive, arms-length negotiation' . . . cast a shadow on the entirety of the district court's order"].)

Here, no meaningful judicial review and approval of the settlement agreement occurred. This lack of oversight goes to the very heart of the court's role in derivative claim settlements. Accordingly, the appropriate remedy is to remand the matter to allow the judicial review process to occur.[7]

### D. Forfeiture/Invited Error

The Stratemans next argue Norman forfeited his judicial approval argument by failing to inform Judge Kahn that the settlement required court approval. Norman agreed to the settlement terms and, when asked if anything else needed to be placed on the record, Norman only stated that the court should retain jurisdiction under Code of Civil Procedure section 664.6.

Again analogizing to class action settlements, we conclude a forfeiture or invited error analysis is inappropriate. Courts have certain independent

---

[7] For similar reasons, the Stratemans' argument that Norman is "not aggrieved" by the lack of judicial approval must fail. Judicial review and approval of derivative settlements is crucial specifically because Norman may not be acting in the corporation's or absent shareholders' best interests.

duties when reviewing class action settlements.  (See, e.g., *Barnes, Crosby, Fitzgerald & Zeman, LLP v. Ringler* (2012) 212 Cal.App.4th 172, 184 [courts have an independent duty to determine the reasonableness of an attorney fee award as part of a class action settlement].)  " '[T]o protect the interests of absent class members, the court must independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interests of those whose claims will be extinguished.' " (*Kullar*, *supra*, 168 Cal.App.4th at p. 130.)  " 'Because absent class members are not directly involved in the proceedings, oversight to ensure settlements are fair and untainted by conflict is the responsibility of both the class representative *and the court*.' " (*Barnes*, at p. 184.)

Similar considerations apply to derivative claim settlements.  To protect the interests of the corporation and absent shareholders who may be bound by the settlement, courts have independent duties to ensure derivative claim settlements are fair, reasonable, and not the product of fraud, overreaching, or collusion by the settling parties.  (See *Robbins*, *supra*, 127 Cal.App.4th at p. 449.)  Accordingly, we decline to apply a forfeiture or invited error analysis to negate a trial court's failure to undertake this important review and approval process.

In sum, derivative claim settlements require judicial review and approval, evaluating factors similar to those considered in class action settlements.  No evidence has been presented that Judge Kahn or Judge East undertook such a review.  While we are troubled by Norman's conduct in agreeing to a settlement and then—over a year later—objecting to that settlement as unenforceable, the important policy reasons requiring judicial review and approval of derivative claim settlements take priority. Accordingly, enforcing the settlement, without first reviewing whether the

17

settlement was fair and reasonable, constituted an abuse of discretion. We remand for the court to conduct this review in the first instance.[8]

## DISPOSITION

The trial court's order granting the motion to enforce the settlement and denying the motion to set aside the settlement and subsequent judgment are vacated without prejudice. The matter is remanded to the trial court to conduct the necessary review of the settlement. If the court subsequently approves the settlement following such review, it may reinstate its prior order on the motions at its discretion. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)


PETROU, J.


WE CONCUR:


FUJISAKI, Acting P. J.


RODRIGUEZ, J.



A170356
*Norman v. Strateman*

---

[8] Because we remand for the court to conduct this review, we need not reach Norman's arguments regarding the merits of the settlement, including whether Patrick intended to return customer assets.

18

Trial Court: The City and County of San Francisco Superior Court

Trial Judge: Hon. Rochelle C. East

Counsel:

GCA Law Partners, James L. Jacobs and Valerie M. Wagner for plaintiff and appellant.

Complex Appellate Litigation Group, Brian A. Sutherland; and Sideman & Bancroft, Zachary James Alinder for defendants and respondents.

No appearance for nominal defendants.