[Civ. No. 850.    Third Appellate District.—October 31, 1911.]

T. NORMAN HARVEY and C. M. BENEDICT, Appellants, v. F. M. MEIGS, A. W. MEIGS, R. L. MEIGS, ARTHUR H. CRANE, E. C. DUDLEY, C. L. MORGAN, W. S. UPHAM, CARISA CHEMICAL COMPANY, a Corporation, MEIGS & COMPANY, a Copartnership, RAYMOND DUDLEY, and W. I. WILCOX, Respondents.

CORPORATION—COMPLAINT BY STOCKHOLDERS—DEMURRERS SUSTAINED—JUDGMENT — APPEAL — ARGUMENT — ABSENCE OF RESPONDENT'S BRIEF.—In an action by the stockholders of a corporation in its behalf to recover for alleged fraud of the defendants upon the corporation, where general and special demurrers to the complaint were sustained, and final judgment was entered thereupon, and upon appeal therefrom appellants filed their brief, but the respondents presented no argument, it is held due to the reviewing court that counsel for both sides should aid the court with their points and

17 Cal. App.—23

authorities, and that where plaintiffs were sent out of court upon their pleadings, without a hearing upon the merits, the counsel for the adversary parties should state the grounds of their assault on the complaint, and not throw all the responsibility on this court unaided by an argument on their behalf.

Id.—Cause of Action—Conspiracy to Defraud Corporation—Misappropriation of Money—False Credits—Fraud in Stock—General Demurrer Improperly Sustained.—Where the complaint of the stockholders avers a combination and conspiracy of the defendants to defraud the corporation by electing directors who were subservient to their will, and to dictate all their acts in the interests of defendants and have thereby caused a misappropriation of $94,000 of its funds to them, and the entry of false credits in their favor of $49,000, and that while owning only 50,000 shares of its stock, they have fraudulently caused to be entered on the books in their favor 400,000 shares thereof, and seeks an accounting against the defendants in favor of the corporation, the return thereto of said money misappropriated, and the cancellation of such false credits, and of 350,000 shares of its stock, and an injunction to prevent the fraudulent use thereof, it states a cause of action in favor of the corporation against the defendants, and a general demurrer thereto was improperly sustained.

Id.—Question of Parties — Directors — New Parties to Amended Complaint — Leave of Court — Presumption — Practice.—It is held that, in so far as it appears that the personnel of the board of directors has not been changed under the alleged control thereof by the defendants, complete relief cannot be afforded without their being brought in as codefendants. Where it is objected that new parties plaintiff and defendant were joined in an amended complaint without leave of court, it must be presumed upon appeal that the amended complaint was filed by leave of court; and, as it supersedes the original, the objection cannot be raised upon special demurrer to the complaint, but only on motion to strike out.

Id.—Misjoinder of Causes of Action not Shown—Gist of Action—Acts Done Pursuant to Conspiracy—Grounds for Relief in Equity.—It is held that a special demurrer for misjoinder of causes of action was improperly sustained; the alleged conspiracy is not of the gist of the action, but it is the acts done pursuant thereto which constitute the cause of action for relief in equity. A court of equity may, in the same action by stockholders, grant relief against the fraudulent misappropriation of the money of the corporation by the defendants, and against other acts of fraud, including the fraudulent issue of stock by the defendants charged with such misappropriation, and grant an injunction to prevent similar acts which are part of a common design. The relief granted may be as varied and diversified as the means employed by defendants to produce the grievance complained of.

ID.—TIME OF ACQUISITION OF STOCK BY PLAINTIFFS IMMATERIAL TO CAUSE OF ACTION.—Where the complaint shows that both of the plaintiff stockholders were owners of stock of the corporation prior to the commencement of the action, though one of the plaintiffs is shown to have owned 1,900 shares of stock since two years prior thereto, and the date of the acquisition of the stock of 100 shares by the coplaintiff does not appear, it is held that both plaintiffs have the right to prevent the payment of fraudulent credits shown to stand on the company's books in favor of the defendants, and to compel a return to the corporation of money fraudulently appropriated by the defendants, even though they may have acquired their shares subsequent thereto.

ID.—COMPLAINT NOT AMBIGUOUS—CONTROL OF CORPORATION BY DIRECTORS AT TIME OF ACTS COMPLAINED OF.—It is held that the complaint is not ambiguous in not showing that defendants owned a majority of the stock at the time of the commission of the acts complained of, nor because it does not show who were directors at that time, where it sufficiently shows that they then appeared on the books of the corporation to be such owners and thereby had the means of control from their relation to the corporation, and also that the defendants actually controlled its entire board of directors at all times since the corporation was organized.

ID.—CERTAINTY IN PLEADING—FACTS BEST KNOWN TO DEFENDANT—LESS CERTAINTY REQUIRED.—It is held that the complaint is sufficiently certain in its averments as to the manner in which and the times when defendants misappropriated and converted to their own use the money wrongfully withdrawn from the corporation, but that the case is one where the defendants practically constituted the managing body of the corporation, and must have had full knowledge of all the facts which they insist plaintiffs should have alleged, though not in a position to ascertain them; and that less certainty is required in the allegations of the complaint, where the facts are such as to which the plaintiffs cannot, from their nature, have as full information as the defendants.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Geo. A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

Charles C. Boynton, and Frank L. Hultman, for Appellants.

J. C. Campbell, and R. G. Hudson, for Respondents.

CHIPMAN, P. J.—A general and special demurrer to the fourth amended complaint was sustained without leave to amend, and defendants had judgment that plaintiffs take nothing by the action. The appeal is from the judgment.

In their said amended complaint the plaintiffs allege that they bring the action "on behalf of the said Carisa Chemical Company, and on behalf of themselves and all other stockholders of said Carisa Chemical Company; that the said company had been a corporation ever since the month of August, 1904, with a capital of one million shares of the actual value of one dollar each at the time of issue and that the number of directors is and at all times has been five; that plaintiff Harvey is and ever since a date prior to the commencement of the action has been a *bona fide* owner and holder of one hundred shares of the stock of said corporation, and plaintiff Benedict is and ever since the month of February, 1906, has been the owner and holder of nineteen hundred shares of the capital stock of said corporation; that defendants F. M. Meigs and A. W. Meigs are and at all times mentioned in the complaint have been copartners under the name of Meigs & Company." (The original complaint was filed November 7, 1908.) It is then alleged that the individual defendants named "acquired and at all times since the organization of the defendant corporation have controlled, and are controlling, and have, and have had, standing in their names on the books of said corporation, a majority of the outstanding stock of said corporation, and said defendants at all said times have combined and conspired together to accomplish the unlawful and fraudulent acts and purposes herein alleged, and to that end to elect the directors and dictate the acts of the directors of said corporation and the acts of said corporation, and said defendants have at all said times, for the purpose of consummating the ends of said conspiracy, caused to be elected men constituting a majority of the board of directors of said corporation, in every way subservient to the wishes and will of said defendants, and men who had no interest in the management and conduct of the affairs of said corporation except as the implements and representatives of the interests and will of said defendants, and at all said times defendants dictated, and do now dic-

tate, all the acts of the directors of said córporation and all of the acts of said corporation."

It is then averred that by reason of the foregoing facts it "has been futile and useless for plaintiffs to make any demand upon the said corporation or its directors to commence this, or any, action against defendants," and that during the times mentioned in the complaint over $135,000 came into the ownership and possession of the corporation and the defendants "have, by virtue of their control of said corporation and its board of directors, fraudulently and wrongfully taken and withdrawn from said corporation, and have appropriated and converted to their own use and benefit, without any consideration or benefit to the said corporation, in excess of ninety-four thousand dollars ($94,000) of said money of said corporation, which said money said defendants now retain and claim as their own property and deny that said corporation has any interest in or right thereto."

It is further averred that defendants, "as part of said conspiracy and with intent to defraud said corporation and its board of directors, have sought and endeavored to create an indebtedness, and have created a fictitious and fraudulent indebtedness against said corporation and in favor of defendants [other than defendant Upham]. That said defendants have caused such fictitious indebtedness to be inscribed on the books of the defendant corporation as an indebtedness of said corporation under and as of date August 31, 1908, and as on said day pretended balances appear on said books to the credit of the following named firm and persons, and the amount to the credit of any firm or person immediately follows the name of the firm or person in whose favor said credit appears, as follows, to wit: [Then follow the items aggregating over $49,000.] That the fact is, there is not due, owing and unpaid to F. M. Meigs, A. W. Meigs, R. L. Meigs, Meigs & Company, E. C. Dudley, L. Raymond Dudley, W. I. Wilcox, Charles L. Morgan, or any of them, from said corporation, nor was there due, owing or unpaid at such date as said balances appear, or at any prior date or at all, to said persons or any of them, any sum of money whatsoever from said corporation; and any indebtedness ap-

pearing upon the books of said corporation as due from said corporation to said persons, or either of them, is and has been at all times, fictitious, fraudulent and void, and without consideration, and has been created by said defendants for the purpose of transferring the assets of the corporation from the defendant corporation to themselves, with the purpose of enriching themselves, and that said defendants threaten to, and will, unless restrained, withdraw such sums appearing in said credits, and cause same to be paid to themselves, and will thereby injure the defendant corporation to an amount exceeding forty-nine thousand dollars ($49,000).

"VII. That said defendants, other than defendant corporation, with intent to defraud the defendant corporation, have claimed, and do now claim, to be the owners of, and have, by virtue of their said control of said corporation, caused themselves to appear upon the books of said corporation as the owners of, more than four hundred thousand (400,000) shares of the subscribed and outstanding stock of the defendant corporation, and they do now appear as such owners, whereas the total subscribed and outstanding stock of said corporation does not exceed six hundred and eighty-two thousand and fifty-five (682,055) shares; that of said four hundred thousand, more than three hundred and fifty thousand (350,000) shares have been issued fraudulently and without any consideration whatsoever to said corporation. That such improper issues of stock were made directly to these defendants, and were so made as to enable, and did enable, these defendants to control and manage the affairs and business of said corporation, and to continue in such control and management for the purpose of carrying out the fraudulent acts and the conspiracy herein alleged to the grievous injury of these plaintiffs and of the defendant corporation. That the value of said three hundred and fifty thousand (350,000) shares of stock fraudulently appropriated by said defendants and their agents was at the time of said appropriation three hundred and fifty thousand dollars ($350,000)."

It is then alleged that "plaintiffs herein and their transferrers, until within one month prior to the time of commencing this action, had no knowledge, nor ever had knowl-

edge, of the acts, transactions and attempted transactions herein complained of. That they never authorized them or any part of them; that they never consented to them or any part of them; . . . that they have no redress through the corporate management, and that they are without any plain, adequate, certain and speedy remedy at law.''

An accounting to the corporation by the defendants is prayed for; that a discovery be had of the amount of damage to said corporation; that defendants be compelled to refund to the corporation the money misappropriated by them—to wit, $94,000—with interest; that the alleged fraudulent credits appearing on the corporation books to defendants be canceled; that the alleged fraudulent shares—namely, 350,000 shares—of the said capital stock be canceled or that defendants be required to pay to the corporation its value; that defendants be enjoined from paying to themselves, or causing to be paid to them, the said sums standing on the books of the corporation to their credit; also from voting said shares of stock alleged to have been fraudulently issued to them; from disposing of any of the money or property of the corporation; from acting in any trust capacity in the management of said corporation and for general relief.

Defendants not only challenge the sufficiency of the alleged facts, but they assign numerous defects in the complaint which may be thus summarized:

1. That there is a misjoinder of parties, in that plaintiff Benedict was joined as plaintiff without leave of court and, for like reason, defendants R. L. Meigs, Dudley and Wilcox were joined as defendants; 2. That several causes of action are improperly united—namely, a cause of action for conspiracy; for moneys fraudulently appropriated and converted; for cancellation of fraudulent issues of stock; for an accounting and injunction; 3. That the complaint is ambiguous in that it cannot be ascertained therefrom whether plaintiffs Harvey and Benedict were stockholders at the time the alleged wrongful acts were committed; or that the defendants were stockholders of a majority of the stock at such time; or who were directors or a majority of the board at such time; or whether the alleged conspiracy was consummated by defendants as stockholders or as directors or officers of the corporation; or in what manner plaintiffs have been

injured by any of the alleged wrongful acts of defendants; or in what manner or at what time defendants are alleged to have appropriated and converted the sum of $94,000 as alleged. Like grounds are set forth as showing the uncertainty and unintelligibility of the complaint.

We are without any assistance from the respondents, no brief having been filed by them. One of two inferences might seem to follow—either that the complaint is so obviously insufficient as to call for no explanation of its defects, or that, as obviously, its sufficiency is apparent. And yet we are not at liberty to indulge either inference. I take this opportunity to remark that it is due to the reviewing court that counsel should extend to it all possible assistance in its endeavor to reach right conclusions in cases brought before it. Briefs of counsel have a double value, in that they serve to lighten the labor of the reviewing court, thus facilitating the decision of cases, and in that they often present points of view which might otherwise be overlooked. For myself, I may say that rarely, if ever, have I found a brief without value in the determination of the case in which it is filed, and I am glad to acknowledge the great service to the court which counsel generally extend by their presentation of points and authorities.

I desire to add that where a plaintiff is sent out of court on his pleading, without a hearing on the merits of his case, the adversary party should support the grounds of his assault and not throw all responsibility upon the appellate court unaided.

Passing for the moment the alleged imperfections of the complaint suggested by the special demurrer, I think enough appears in the complaint to withstand the general demurrer.

It appears from the amended complaint: That plaintiff Benedict was, in 1906, and ever since has been, a stockholder of the corporation, and plaintiff Harvey was such stockholder prior to and at the commencement of the action; that the Cariso Chemical Company became a corporation in 1904 with a capital stock of $1,000,000, of like number of shares of the value of $1 each, and that each share thereof at the time of issue had an actual value of $1; that the persons named as defendants have had standing in their names on the books

of the corporation more than a majority of its outstanding shares ever since the organization of the corporation, and have combined and conspired to accomplish the unlawful purposes alleged, and to that end have elected directors subservient to their wishes who had no interest in the corporation except to work out the will and interests of defendants as their "implements and representatives," and the defendants have, at all times mentioned in the complaint, "dictated and do now dictate all the acts of the directors of said corporation and all the acts of the said corporation"; that during the times mentioned in the complaint the corporation came into the possession and ownership of the sum of $135,000, and that defendants "have by virtue of their control of said corporation and its board of directors, fraudulently and wrongfully taken and withdrawn from said corporation, and have appropriated and converted to their own use and benefit, without any consideration or benefit to said corporation, in excess of $94,000 of said money" and still retain the same; that "as a part of said conspiracy and with intent to defraud said corporation," through their said control of its board of directors, defendants have created "a fictitious and fraudulent indebtedness against said corporation and in favor of defendants" (naming all the defendants except defendant Upham); and in the execution of said fraudulent design have caused said fictitious indebtedness to be entered on the books of the corporation so as to show credits to certain named defendants, amounting to over $49,000, whereas in fact no such sum or any sum is due or owing to said defendants, but that the said credit entries are fraudulent and were made by defendants without any consideration to the corporation, and for the sole purpose of "enriching themselves" to the extent of such credits; that the entire issued shares of said corporation do not exceed 682,035 shares, of which defendants "caused themselves to appear on the books of said corporation as owners" of 400,000 shares, but that 350,000 of said shares have been issued fraudulently and without any consideration whatsoever to said corporation; that said shares were issued to defendants "so as to enable and did enable these defendants to control and manage the affairs and business of said corporation, and to continue in such control and management for the purpose of carrying out the

fraudulent acts and the conspiracy herein alleged to the grievous injury of these plaintiffs and of the defendant corporation''; that ''the value of said 350,000 shares of said stock so fraudulently appropriated by said defendants and their agents was at the time of said appropriation $350,000.''

It does not appear who were the directors, nor does it appear by direct averment that directors were chosen at the organization of the corporation, or that they or their successors continued to act as such throughout the times mentioned, although these latter facts appear inferentially. As the business of the corporation could only be transacted through its directors, the acts complained of could not have been consummated otherwise than by the aid of the directors, and it does appear very clearly that the defendants worked their purpose through the directors, from all which appearing in the complaint it may be inferred from the complaint that directors were in fact elected and were acting, during the period mentioned. The demurrer admits the truth of the facts pleaded, and it seems to me that sufficient facts are sufficiently pleaded to constitute a cause of action for appropriate relief.

I think, however, that the directors of the corporation should have been made parties to the action, and as the personnel of the board has not changed so far as appears, complete relief cannot be afforded without their being brought in as codefendants. The special demurrer is next to demand notice.

1. A question is raised as to the right to include new parties plaintiff and defendant in an amended complaint under a claim that it was done without previous leave of court obtained. The answer to this objection raised by the demurrer is, that the reviewing court deals only with the amended complaint which it must be presumed was filed by leave of court, otherwise the proper proceeding on defendant's part was by motion to strike out. In *Beattie Mfg. Co.* v. *Geraldi*, 166 Mo. 142, [65 S. W. 1035], the court said: ''When the amended petition was filed, the one of which it was amendatory was suspended; and as a demurrer goes only to some defect apparent upon the face of the pleading demurred to, this ground was in any event unavailing, and the question could only have been raised by motion to strike out.''

2. It is claimed that several causes of action have been improperly united. The alleged conspiracy is not of the gist of the action; it is the acts done pursuant to the alleged confederation that constitute the cause of action. I can see no reason why a court of equity may not in the same action grant relief against the fraudulent misappropriation of money of the corporation; inquire into the fraudulent issue of stock to the same parties charged with such misappropriation; take an accounting to determine the extent of any misappropriation, and also grant an injunction if necessary to prevent similar acts. Especially must this be so when it appears that all the acts complained of are part of a common design. (*Taylor* v. *Bidwell,* 65 Cal. 489, [4 Pac. 491]; *Wickersham* v. *Crittenden,* 93 Cal. 17, [28 Pac. 788].) Said the court in the case last cited: "It is often necessary, in order that the plaintiff may obtain full justice, that the relief granted him be as varied and diversified as the means that have been employed by the defendant to produce the grievance complained of."

3. It is next claimed that it cannot be seen from the complaint that plaintiffs were stockholders at the time of the alleged commission of the acts therein set forth. The complaint shows that one of the plaintiffs—Harvey—was a stockholder at the commencement of the action, which was November 7, 1908, and that the other, Benedict, was a stockholder in February, 1906. Whether plaintiff Harvey became a stockholder by purchase from one who was a holder of shares at the time of the alleged fraudulent transaction or whether he became a stockholder by subscription to the stock does not appear. Mr. Morawetz says that "the plaintiff's right of action, if he have any, is derived by purchase and transfer from the former holder of the shares." (Morawetz on Corporations, sec. 265.) He further says: "It has been pointed out that the estate of a corporation is to be treated as that of a continuing institution, irrespective of the members at any particular time composing it. Each share represents an interest in the entire concern, and the several holders are entitled to equal rights irrespective of the time when they acquired their shares. Causes of action belonging to the corporation increase the value of the corporate estate, and

must be treated like other assets; when enforced they inure to the benefit of all the stockholders without distinction.'' (Sec. 265.) I cannot reconcile this statement with the author's other statement that ''a shareholder who has acquired his shares after an unauthorized transaction has taken place certainly cannot base his complaint on the ground that he has suffered a wrong, or that his equitable rights have been infringed.'' However this may be, both plaintiffs in any view have, on the showing made in the complaint, a right to prevent the payment of the fraudulent credits shown to stand on the company's books in favor of defendants. And if the defendants have without consideration and fraudulently appropriated $94,000 of the corporate funds which should be restored to its treasury, I fail to see why they have not a cause of action to compel such return, even though they acquired their shares after such misappropriation. (See the question fully considered in *Just* v. *Idaho Canal & Irr. Co.*, 16 Idaho, 639, [133 Am. St. Rep. 140, 102 Pac. 381.])

4. Ambiguity is alleged also because the complaint does not show that defendants were stockholders ''and owning a majority of the stock at the time of the alleged commission of the acts set forth.'' It does not appear that at all times since the organization of the defendant corporation the defendants have had standing in their names on the books of the corporation a majority of the shares and that they have controlled the directors and the corporation. The complaint does not allege that defendants were the owners of these shares, but it alleges that they appear on said books to be the owners. Their relation to the corporation and the means of their control over it sufficiently appear.

5. It is alleged that the complaint is ambiguous because it cannot be ascertained therefrom who were directors constituting a majority of the board at the time of the alleged commission of the acts complained of. It does appear that defendants controlled the entire board at all times since the corporation was organized, and so far as defendants are concerned it is not material who were directors, for the action is against the defendants and not against the directors. As already intimated, the directors should be made parties, for complete relief cannot be had otherwise.

6. It sufficiently appears how and in what manner plaintiffs are being and have been injured by the alleged wrongful acts of the defendants.

7. The complaint is sufficiently certain in its averments as to the manner and times defendants appropriated and converted to their own use the $94,000 alleged to have been wrongfully withdrawn from the corporation by them. In *Schaake* v. *Eagle Automatic C. Co.*, 135 Cal. 472, [63 Pac. 1025, 67 Pac. 759], the court said: "Faults consisting in ambiguities and uncertainties should be viewed, to a certain extent, in the light of the situation of the parties as to their knowledge of the facts,—that is, as to facts of which the plaintiff cannot, from their nature, have as full information as the defendant. Less certainty is required in the allegations of the complaint, partly because a desirable degree of certainty may be impossible, and partly because the facts being known to the defendant he is not likely to be embarrassed or injured." The case here is one where the defendants practically constituted the managing body of the corporation and must have had full knowledge of all the facts which they insist that plaintiffs must have alleged, though in no position to know or ascertain them.

I am unable to discover sufficient support for the judgment, and it is therefore reversed.

Hart, J., and Burnett, J., concurred.