[L. A. No. 21794. In Bank. Apr. 22, 1952.]

GLADYS HOGAN, as Executrix, etc., Appellant, v. R. F. INGOLD et al., Respondents.

McLaughlin & Casey for Appellant.

Kenny & Morris and Robert W. Kenny, as Amici Curiae on behalf of Appellant.

Flint & MacKay, William R. Flint, Roscoe C. Andrews, J. D. Willard and Hunter & Liljestrom for Respondents.

SCHAUER, J.—This case presents to this court for the first time the question as to whether section 834 of the Corporations Code[1] (Stats. 1949, ch. 499, § 1).is validly applicable to a stockholder's derivative suit commenced after the effective date of the statute but concerning wrongs allegedly committed before that date and which suit is instituted by a shareholder who acquired his stock otherwise than by operation of law, and at a time subsequent to the commission of the wrongs complained of but prior to enactment of the statute. We conclude that the statute is procedural, that application of it here is prospective and does not divest the plaintiff of any substantive vested right, and that the order of the trial court dismissing the action for failure to furnish security for costs and expenses as required should be affirmed.

The legislation in question imposes two principal conditions on the institution and maintenance of stockholder's derivative suits: (1) The complaint must allege that plaintiff "was a

---

[1]Section 834: "(a) No action may be instituted or maintained in the right of any domestic or foreign corporation by the holder or holders of shares, or of voting trust certificates representing shares, of such corporation unless both of the following conditions exist:

"(1) The plaintiff alleges in the complaint that he was a registered shareholder or the holder of voting trust certificates at the time of the transaction or any part thereof of which he complains or that his shares or voting trust certificates thereafter devolved upon him by operation of law from a holder who was a holder at the time of the transaction or any part thereof complained of.

"(2) The plaintiff alleges in the complaint with particularity his efforts to secure from the board of directors such action as he desires and alleges further that he has either informed the corporation or such board of directors in writing of the ultimate facts of each cause of action against each defendant director or delivered to the corporation or such board of directors a true copy of the complaint which he proposes to file, and the reasons for his failure to obtain such action or the reasons for not making such effort.

"(b) In any such action, at any time within thirty days after service of summons upon the corporation or any defendant, the corporation or such defendant may move the court for an order, upon notice and hearing, requiring the plaintiff to furnish security as hereinafter provided. Such motion may be based upon one or more of the following grounds:

"(1) That there is no reasonable probability that the prosecution

registered shareholder . . . at the time of the transaction or any part thereof of which he complains'' or that the shares devolved upon him by operation of law from one who was a registered shareholder at such time. (2) On motion (on the grounds specified in the statute and hereinafter epitomized) the court may require the plaintiff to furnish security for ''the probable reasonable expenses, including attorney's fees, of the corporation and the moving party which will be incurred in the defense of the action.'' On failure to furnish the required security within a reasonable time to be fixed by the court ''the action shall be dismissed.''

The grounds upon which the motion for security may be based are: (a) That there is no reasonable probability that prosecution of the cause of action alleged against the moving

of the cause of action alleged in the complaint against the moving party will benefit the corporation or its security holders;

''(2) That the moving party, if other than the corporation, did not participate in the transaction complained of in any capacity.

''The court on application of the corporation or any defendant may, for good cause shown, extend such 30-day period for an additional period or periods not exceeding sixty days.

''At the hearing upon such motion, the court shall consider such evidence, written or oral, by witnesses or affidavit, as may be material: (a) to the ground or grounds upon which the motion is based, or (b) to a determination of the probable reasonable expenses, including attorney's fees, of the corporation and the moving party which will be incurred in the defense of the action. If the court determines, after hearing the evidence adduced by the parties at the hearing, that the moving party has established a probability in support of any of the grounds upon which the motion is based, the court shall fix the nature and amount of security to be furnished by the plaintiff for reasonable expenses, including attorney's fees, which may be incurred by the moving party and the corporation in connection with such action, including expenses for which said corporation may become liable pursuant to Section 830. A determination by the court that security either shall or shall not be furnished or shall be furnished as to one or more defendants and not as to others, shall not be deemed a determination of any one or more issues in the action or of the merits thereof. The corporation and the moving party shall have recourse to such security in such amount as the court shall determine upon the termination of such action. The amount of such security may thereafter from time to time be increased or decreased in the discretion of the court upon showing that the security provided has or may become inadequate or is excessive. If the court, upon any such motion, makes a determination that security shall be furnished by the plaintiff as to any one or more defendants, the action shall be dismissed as to such defendant or defendants, unless the security required by the court shall have been furnished within such reasonable time as may be fixed by the court.

''(c) If any such motion is filed, no pleadings need be filed by the corporation or any other defendant, and the prosecution of such action shall be stayed, until 10 days after such motion shall have been disposed of.''

party will benefit the corporation or its security holders; (b) That the moving party, if other than the corporation, did not participate in the transaction complained of in any capacity. The trial court in this proceeding concluded that ground (a) was established; its conclusion was amply supported if the statute is valid and applicable.

Plaintiff's complaint was filed on December 9, 1949; section 834 of the Corporations Code had become effective October 1, 1949; plaintiff became a stockholder not earlier than March, 1949, on conveyance to him by one Finnegan of 215 shares. All the transactions complained of, with one exception hereinafter noted, occurred prior to plaintiff's becoming a shareholder. The one transaction excepted (alleged leasing of property, with option to purchase at below its market value, to an organization controlled by defendants) assertedly took place on October 7, 1949, after plaintiff became a stockholder and after the effective date of the statute.

In material substance the complaint alleges: That plaintiff is the owner of 215 of a total of 1,235 outstanding shares of the Washington Holding Company, a corporation, and that the individual defendants concerned on this appeal own, or are registered as owning, shares in respectively stated numbers varying from 5 to 643, and aggregating 718; that the corporation, Washington Holding Company (hereinafter called Washington), has owned, since 1932, described real and personal property. Four individual defendants, Shoor, Ingold, Jenkins and Jesson control Washington and are the officers and directors thereof. Other defendants, Powell, Tanner and Hunt are officers of Washington. Since the organization of Washington in 1932, the four individual defendants have conspired to acquire all the property of Washington to the exclusion of the other shareholders, by issuing false financial statements of Washington, leasing its property to organizations under their control for less than its market rental value, failing to collect such rentals, representing that Mary Eloise Clark was a director when she was not, selling and acquiring stock for delinquent stock assessments unnecessarily levied during 1934-1939, and giving, in 1949, as heretofore mentioned, the lease with an option to purchase on improper terms. The individual defendants have concealed the foregoing from plaintiff. Since the action was commenced, plaintiff Hogan died and his executrix has been substituted in his place.

After the complaint was filed, defendants Ingold, Shoor, Tanner, Powell, Hunt and Jenkins moved, on the grounds stated in the statute, for an order requiring plaintiff to furnish security as therein provided. Supporting and opposition affidavits were filed and the matter heard. Pursuant to the motion, an order was made requiring security, and plaintiff having failed to furnish it within the time specified, the action was ordered dismissed as to the moving defendants. From the latter order this appeal is taken.

The affidavits presented on the motion raise various material issues of fact but, since it appears that the trial court based its order at least in part, and although indirectly, probably controllingly, on its finding, supported by ample evidence, that plaintiff (which term is used herein as indicating either the decedent who commenced the action or the present plaintiff) was, with the exception of the one transaction already noted, not the owner, registered or otherwise, of any stock at the time of any of the transactions or any part thereof complained of and did not acquire his stock by operation of law from one who was a stockholder at any such time, we treat the case on that basis.

Such finding, as above indicated, appears to have been substantially relied upon by the trial court in reaching its conclusion that there is no reasonable probability that prosecution of the cause of action alleged against the moving parties would benefit the corporation. It is to be noted, however, that the order dismissing the action is not based on a holding that the complaint fails to state a cause of action; rather, the court considered the facts as to the time and circumstances of plaintiff's acquirement of his stock, and the provisions of subdivision (a) (1) of section 834, and placed reliance thereon in reaching its conclusion that there was no reasonable probability that prosecution of the cause of action alleged would benefit the corporation, and hence, that it was proper to require plaintiff to furnish security for costs and attorney's fees in a reasonable amount. As previously mentioned, and now repeated for emphasis, it was for failure to furnish the security as ordered that the action was dismissed. Thus as applied here the statute did not operate to absolutely preclude plaintiff from maintaining the suit; it merely required him to furnish the security if he were to proceed further in his fiduciary capacity.

Plaintiff contends that her decedent as an incident of

acquiring ownership of the stock by purchase acquired an unconditional vested property right to come into equity in a fiduciary capacity and in that role to institute and maintain this action on behalf of the corporation as to all wrongs complained of and that to impose the conditions prescribed by section 834 on the institution and maintenance of the action is to give the statute retroactive effect and illegally deprive decedent and this plaintiff of a valuable property right. This contention cannot be sustained; a person has no property right in being appointed or in acting on his own nomination as a guardian *ad litem*. He may nominate himself but he cannot compel the court to accept his nomination; he has no property right to be accepted by the court to institute and maintain an action in the right of another on terms beyond the control of the court or the Legislature.

██ It should be observed that section 834 is not designed and does not operate to deprive a shareholder of any vested property right. By its very words the section relates solely to actions which may be "instituted or maintained *in the right of any domestic or foreign corporation* by the holder . . . of shares . . . of such corporation." (Italics added.) ██ Since the statute is directed only at actions instituted or maintained "in the right" of the corporation it has no application to actions or suits seeking directly to enforce personal rights of shareholders. Stockholders, if they have a personal cause of action, are still free to sue the corporation, the majority stockholders, or the directors of the corporation, and to recover for any cause they can establish. It becomes important therefore to clearly understand at once the precise nature of a stockholder's derivative action.

██ ██ In *Whitten* v. *Dabney* (1915), 171 Cal. 621, 630-631 [154 P. 312], this court said: "And here again it becomes necessary to call attention to the fact that these plaintiffs have no personal wrongs for which they are entitled to seek redress in this action. 'The stockholder does not bring such a suit because *his* rights have been *directly* violated, or because the cause of action is *his* or because *he* is entitled to the relief sought. He is permitted to sue in this manner *simply in order to set in motion the judicial machinery of the court.*' (3 Pomeroy's Equity, 3d ed., sec. 1095.) . . . What is the exact situation of a plaintiff in such an action? He is a trustee pure and simple, seeking in the name of another a recovery for wrongs that have been committed against that other. His

position in the litigation is in every legal sense the precise equivalent of that of the guardian *ad litem*. The guardian *ad litem* stands as the representative of some person incompetent to sue or be sued directly. He is appointed by the court to represent that incompetent's interests; to prosecute or defend with the highest diligence and good faith. The stockholder beginning this action does not even occupy the position of a creditor suing on his own account and on account of his fellow-creditors. In the latter case the creditor plaintiff has a direct personal interest in the litigation, and within limitations not here necessary to discuss, may deal with that litigation as his own. But the stockholder acts in purely a representative capacity. He is a guardian *ad litem* by virtue of statutory authority, empowered to do precisely what a guardian *ad litem* appointed by a court may do. He has gone into equity seeking redress for a corporation under disability to obtain relief itself, precisely as the guardian *ad litem* goes into court to obtain like redress for a client under disability by reason of incompetency or nonage. The principles governing the conduct of a guardian *ad litem* are in full strictness applicable to the conduct of such a plaintiff stockholder. Not only should a plaintiff in such a fiduciary capacity be willing to take no act that did not first receive the sanction of the court of equity to which he has appealed, but, more than this, he is not permitted to take any act without such sanction. (*Waterman* v. *Lawrence*, 19 Cal. 210 [79 Am.Dec. 212].) Where an action is prosecuted by a guardian *ad litem*, the infant is the real party. (*Bowers* v. *Kanaday*, 94 Ga. 209 [21 S.E. 458].) And the guardian *ad litem* cannot even be considered a party to the cause. (*Thomason* v. *Gray*, 84 Ala. 559 [4 So. 394]; *Baltimore & Ohio R. R. Co.* v. *Fitzpatrick*, 36 Md. 619; *Tate* v. *Mott*, 96 N.C. 19 [2 S.E. 176]; *Duffy* v. *Pinard*, 41 Vt. 297; *Ingram* v. *Little*, L.R. 11 Q.B.Div. 251.) And what are the principles governing the conduct of a guardian *ad litem*? It is the right and duty of the court to protect the interests of the incompetent represented by the guardian *ad litem* and to exercise supervision over the conduct of that guardian." See, also, to like effect, *Loeb* v. *Berman* (1933), 217 Cal. 716, 720 [20 P.2d 685]; *Russell* v. *Weyand* (1935), 5 Cal.App.2d 259, 260, 266 [42 P.2d 381]; *Spellacy* v. *Superior Court* (1937), 23 Cal.App.2d 142, 147 [72 P.2d 262].

Speaking likewise of the character of such suits the United States Supreme Court in *Cohen* v. *Beneficial Ind. Loan Corp.* (1948), 337 U.S. 541, 549 [69 S.Ct. 1221, 93 L.Ed. 1528],

said:[2] "The very nature of the stockholder's derivative action makes it one in the regulation of which the legislature of a state has wide powers. Whatever theory one may hold as to the nature of the corporate entity, it remains a wholly artificial creation whose internal relations between management and stockholders are dependent upon state law and may be subject to most complete and penetrating regulation, either by public authority or by some form of stockholder action. Directors and managers, if not technically trustees, occupy positions of a fiduciary nature, and nothing in the Federal Constitution prohibits a state from imposing on them the strictest measure of responsibility, liability and accountability, either as a condition of assuming office or as a consequence of holding it.

"Likewise, a stockholder who brings suit on a cause of action derived from the corporation assumes a position, not technically as a trustee perhaps, but one of a fiduciary character. . . . He is a self-chosen representative and a volunteer champion. The Federal Constitution does not oblige the state to place its litigating and adjudicating processes at the disposal of such a representative, at least without imposing standards of responsibility, liability and accountability which it considers will protect the interests he elects himself to represent. . . . We conclude that the state has plenary power over this type of litigation. . . .

"[P. 552] A state may set the terms on which it will per-

[2]The Cohen case, in the question ultimately decided, may be distinguished from the case here. The court there stated its problem as follows (p. 543 of 337 U.S.): "The ultimate question here is whether a federal court, having jurisdiction of a stockholder's derivative action only because the parties are of diverse citizenship, must apply a statute of the forum state which makes the plaintiff, if unsuccessful, liable for the reasonable expenses, including attorney's fees, of the defense and entitles the corporation to require security for their payment."

The New Jersey statute which the court was considering was by its express terms declared applicable to pending actions. The action before the court had been commenced about two years before the statute was enacted. The court therefore had no occasion to consider or rule on the question as to whether application of the New Jersey law would be purely procedural and prospective in relation to actions instituted after its effective date. The majority held that the statute even when applied to create a liability in the pending case, where none had existed when the action was commenced, did not breach any constitutional guaranty and would be applied in the federal courts.

It would seem that if the statute were substantive, and other than prospective in operation, giving it effect in a pending action might impair the contract obligation or take property without due process. In the case before us no such problem arises. The statute itself does not impose any liability on the plaintiff. If he chooses to bring the suit, however, he must meet the conditions imposed.

mit litigations in its courts. No type of litigation is more susceptible of regulation than that of a fiduciary nature . . . and we think . . . it is within the power of a state to close its courts to this type of litigation if the condition of reasonable security is not met.''

If the power of the state over this type of fiduciary litigation is plenary, as the Cohen case states, then surely such litigation is subject to regulation of the type provided by section 834. And if section 834 is applied only to actions instituted after its enactment it is neither substantive in character nor retroactive in operation. It does not in and of itself create any liability or deprive anyone of property or of any vested right either with or without due process nor does it impair the obligation of any contract. The stockholder will not incur any liability for costs if he does not essay to bring in equity a suit in the corporation's right. If he does bring such a suit he knows that he will be subject to the regulating provisions of the statute. There is no more reason to doubt the applicability of the statute to a fiduciary action brought in respect to wrongs assertedly perpetrated before the statute than if it concerned wrongs happening after the statute as long as the action is brought after the effective date of the legislation. In either case the operation of the statute is prospective and procedural because it does not deprive a person of any right which he had at the time of beginning the suit, but merely prescribes the conditions upon which the subsequently instituted equity suit may be brought and maintained. Obviously, it is only in respect to a claimed unconditional right to institute and maintain the fiduciary action in the right of the corporation, and to be unconditionally accepted by the court in that capacity, that plaintiff's claim of impairment goes. This is the only claim he can make because it is the only type of action affected by the statute and the statute does not abolish stockholder's derivative suits but merely imposes regulatory conditions on their institution and maintenance. Plaintiff's stock is still his; any personal rights of action he may possess as attributes or incidents of the stock are still his and, as already noted, are completely unaffected by section 834.

As already pointed out, by bringing a stockholder's derivative action the plaintiff nominates himself to act in a fiduciary capacity substantially as a guardian *ad litem* for the corporation, and he has no vested property right which compels the court to accept him unconditionally in that capacity.

The formulation of regulations for that type of litigation including the determination of what qualifications shall be required of a plaintiff in order that he may institute and maintain a suit in equity "in the right" of another is a matter manifestly appropriate for state legislation, which must be upheld so long as no constitutional rights are invaded. In the light of the authorities already cited it is apparent that application of the statute under the circumstances shown here breaches no constitutional guaranty.

It may be further observed that even without the enactment of section 834 the plaintiff here would not have been permitted to maintain the suit (except possibly in relation to the one transaction alleged to have occurred after he acquired his stock) had it been brought in or transferred to (as upon showing a diversity of citizenship) a federal court, and that this court has never passed upon the question as to the capacity of a shareholder, who was not such at the time of the wrongs complained of, to maintain a derivative suit. Since *Hawes* v. *Contra Costa Water Co.* (sometimes cited as *Hawes* v. *Oakland*) (1881), 104 U.S. 450 [26 L.Ed. 827, 832], it has been the rule in the federal courts that a complaint in a derivative action must contain "an allegation that complainant was a shareholder at the time of the transactions of which he complains, or that his shares have devolved on him since by operation of law."

This rule is now embodied in the Federal Rules of Civil Procedure (rule 23(b), 28 U.S.C.A.) and is enforceable in the federal courts even in states which permit derivative suits without such a showing (*Venner* v. *Great Northern Ry. Co.* (1907), 153 F. 408, 411; affirmed (1908), 209 U.S. 24 [28 S.Ct. 328, 52 L.Ed. 666]). Decisions of the courts of the several states are sharply conflicting and strong arguments can be found in support of either policy. (See anno. 148 A.L.R. 1091, 1097.) In California the only case substantially in point which has been cited to us or which our research has disclosed is *Harvey* v. *Meigs* (1911), 17 Cal.App. 353, 364 [119 P. 941]. The District Court of Appeal there took the view that the action could be maintained regardless of when and how ownership of the stock was acquired.[3] However, in view of the fact that we regard section 834 as controlling on

---

[3]See, also, *Beal* v. *Smith* (1920), 46 Cal.App.2d 271 [189 P. 341], which contains some discussion of the rights of such a shareholder who was without notice of the alleged fraudulent acts at the time he acquired his shares, but the case is decided on the ground that action was

this appeal we express no opinion as to whether, in the absence of such statute, we should follow or disapprove *Harvey* v. *Meigs.*

 Insofar as section 834 authorizes the court on motion and in the exercise of a reasonable discretion to require that a plaintiff in a derivative suit furnish security for "the probable reasonable expenses, including attorney's fees," of the defendants sued, "which will be incurred in the defense of the action," and requires dismissal of the action on failure of the plaintiff to comply with the order within a reasonable time fixed by the court, there is no serious question either as to validity or applicability of the legislation. It is almost universally held that such statutes are not regarded as being given retroactive effect even when applied to actions pending at the time of enactment. Certainly they are not retroactive when applied to actions subsequently commenced (and this must be understood as the only respect in which a question is before us or in which we express our view) even though the cause of action accrued before enactment. The general rule is thus stated in 7 California Jurisprudence 305, § 43: "[C]osts are given only by statutory direction and their allowance depends on the terms of the statute in force at the time of the accrual of the right to have them taxed. This time, in regard to costs on appeal, is the time of the rendition of the judgment on appeal. It follows that the rule pertaining to the allowance of costs may be changed or modified by statute during the pendency of the proceeding." Directly supporting the above statement, see *Turner* v. *East Side Canal & Irr. Co.* (1918), 177 Cal. 570, 571-572 [171 P. 299], and cases there cited; *Wilson* v. *Nichols* (1942), 55 Cal.App.2d 678, 682 [131 P.2d 596] (hearing denied).

 In 96 American Law Reports 1428 (annotation on "Statute relating to costs or attorneys' fees at commencement or at termination of action as controlling") the law is epitomized as follows: "It is well settled that the question whether costs may be allowed in an action or suit, as well as the determination of the method of their computation, is governed by the law as it exists at the time of the judgment which terminates the action or suit, rather than by the law as it existed at the time when the action or suit was commenced,—where

barred by the statute of limitations; *Earl* v. *Lofquist* (1933), 135 Cal. App. 373, 376 [27 P.2d 416], which contains a statement of the rule as announced in *Harvey* v. *Meigs, supra,* but again the holding was that action was barred by the limitations statutes.

there is no provision in connection with the new legislation which clearly saves or excepts therefrom costs in pending actions.'' The numerous illustrative cases which are cited show that statutes either increasing or decreasing the allowable costs, including attorney fees, are consistently applied to litigation pending when such statutes became effective, unless a contrary intent clearly appears from the statute.

It is noted that in *Shielcrawt* v. *Moffett* (1945), 294 N.Y. 180 [61 N.E.2d 435, 439, 159 A.L.R. 971], an attempt is made to distinguish between the recognized rule that ''Liability for the payment of costs . . . is ordinarily measured in accordance with the statute in effect at the time when costs and expenses are fixed by order or by judgment of the court, even though the proceeding may have been initiated before the statute took effect,'' and the situation here presented of imposing a *new* requirement that security for such costs be furnished by plaintiff. Whether this attempted distinction is sound or unsound does not now concern us and we imply no view on it whatsoever. In either event the case does not support the conclusion that application of section 834 to actions filed after its enactment would constitute retroactive application. The holding (p. 438 of 61 N.E.) is merely that the New York statute permitting the corporation defendant to ''require the plaintiff [in a derivative suit] . . . to give security for the reasonable expenses, including attorney's fees,'' did not apply to actions pending at the time the statute became effective. Our statute, in its application to the case before us, involves only its effect on subsequently instituted actions and the Shielcrawt opinion expressly distinguishes such cases. The court there says (*Shielcrawt* v. *Moffett* (1945), *supra*, 294 N.Y. 180 [61 N.E.2d 435, 440, 159 A.L.R. 971]) : ''If the statute had been in effect when the plaintiffs instituted this action they might not have been able or willing to give the required security; if applied to pending actions it might prevent these plaintiffs from trying the action after they had spent time and money in preparing it for trial. Though the Legislature has found that the statute is a just and reasonable solution of a serious problem, it does not follow that it would decide that it would be just and reasonable to apply the statute to actions then pending. . . .

''It is said that, when the Legislature provided that the defendant is entitled to require the plaintiff or plaintiffs to give security 'in any action instituted or maintained in the

right of any foreign or domestic corporation,' it disclosed an intention that the statute should apply not only in actions thereafter instituted but also in actions previously 'instituted' and thereafter 'maintained'. The word 'maintained' may be used in a context where it clearly denotes that it includes pending actions. (*Cf. George Moore Ice Cream Co.* v. *Rose,* 289 U.S. 373, 53 S.Ct. 620, 77 L.Ed. 1265.) In other context it has frequently been given other construction. (See cases collated in 38 C.J., Maintain, §§ 2, 3, 4, 5.) In the statute we are now construing it is at most equivocal and does not, we think, disclose an intent of the Legislature that it should be applied in actions previously instituted."

▪ Lastly, we are of the view that section 4 of the Corporations Code is pertinent. It provides that "No action . . . commenced before this code takes effect, and no right accrued, is affected by the provisions of this code, but all procedure thereafter taken therein shall conform to the provisions of this code so far as possible." Certainly there is nothing in the quoted language which implies that section 834 shall not be applied to actions commenced after its effective date.

▪ Since the power of the state over the institution and maintenance of fiduciary actions of this character is plenary (*Cohen* v. *Beneficial Ind. Loan Corp.* (1948), *supra,* 337 U.S. 541, 550), there is no "right accrued" in the shareholder (to be accepted by the court as, in effect, a guardian *ad litem* for the corporation) to be affected and the declared policy of the state as to all procedure to be taken in derivative actions after the effective date of the statute should be given effect. (See *Smallwood* v. *Gallardo* (1927), 275 U.S. 56, 60-62 [48 S.Ct. 23, 72 L.Ed. 152].)

For the reasons above stated the order appealed from is affirmed.

Shenk, J., Edmonds, J., and Spence, J., concurred.

CARTER, J.—I dissent.

The main question presented is whether section 834 of the Corporations Code is to be applied to past transactions, that is, retroactively, as in the case at bar. That section requires two things prerequisite to the maintenance of a derivative action by a corporation shareholder: (1) That he be a registered stockholder at the time the fraudulent transaction occurred and at the time of the commencement of the action, and (2) that he post security guaranteeing the payment of the expenses of the defense of the suit if he is unsuccessful.

Before discussing the main issue certain pertinent principles should be clarified inasmuch as the majority opinion either casts serious doubt upon them or repudiates them. The right to bring such an action is the established law of this state and elsewhere, except under the rules of procedure of the federal court, whether the shareholder *was or was not* a registered owner when the fraud was committed. It is a *substantial right* whether it be called procedural, property or otherwise. It is the *only* method whereby the fraud of the corporation management may be exposed and restitution obtained, contrary to the intimation of the majority opinion. In an attempt to ameliorate the serious consequence of its holding, the majority make the following highly misleading statements: "Stockholders, if they have a personal cause of action, are still free to sue the corporation, the majority stockholders, or the directors of the corporation, and to recover for any cause they can establish. . . . Plaintiff's stock is still his; any personal rights of action he may possess as attributes or incidents of the stock are still his and, as already noted, are completely unaffected by section 834." There can be no doubt that the majority is fully cognizant of the fact that there is no other remedy or cause of action known to the law available to obtain the relief sought, other than the one here involved. Historically 'speaking the remedy here sought is equitable, as will appear from the discussion to follow.

The majority cite and quote at some length from *Whitten* v. *Dabney*, 171 Cal. 621 [154 P. 312] relative to the capacity of a plaintiff in a so-called derivative action on behalf of a corporation and emphasis is placed upon the analogy made in that case between such a plaintiff and a guardian *ad litem* in the ordinary civil action. While this analogy strikes me as being inappropriate for obvious reasons, I can see no basis for resorting to terminology in order to impair plaintiff's right to prosecute a derivative action. It should be apparent that the analogy between a plaintiff in a derivative action and a guardian *ad litem* is wholly unrealistic as there is no requirement whatever that a guardian *ad litem* have any interest directly or indirectly in the subject matter or outcome of the litigation. He merely stands in the place of the plaintiff who lacks capacity to prosecute the action in his own name. Such is not the case when a corporation is in control of officers who have committed frauds which have resulted in pecuniary loss to its stockholders. There is no incapacity on the part of such corporation to seek redress for the loss

sustained as the result of the fraudulent conduct of its officers, but the officers guilty of the fraud will not permit the corporation to sue in its own name to recover for the loss sustained. Hence, a stockholder who has indirectly suffered such loss in common with the other stockholders, has the right to prosecute such an action on behalf of himself and those similarly affected, including the corporation. Such right is a substantial property right as it may have the effect of substantially increasing the value of the shares of stock owned by the plaintiff by virtue of requiring the defrauding officers to return to the corporation the portion of its assets which they have misappropriated or misused to the detriment of not only the corporation but the shareholders thereof. While it is true as stated by the Supreme Court of the United States in *Cohen* v. *Beneficial Ind. Loan Corp.*, 337 U.S. 541 [69 S.Ct. 1221, 93 L.Ed. 1528], that the plaintiff in such an action assumes a position of a fiduciary character, this does not mean that so far as his own interests are concerned, he is not acting for himself. The fiduciary capacity in which he serves is with relation to the corporation and the other stockholders whose interests he is seeking to advance in common with his own.

The rule here involved is stated in Fletcher Cyclopedia Corporations with supporting authorities: ''In several of the states the rule is well settled that a stockholder may sue although he purchased his shares after the transaction complained of. And it is generally held immaterial that he purchased for the purpose of acquiring the right to sue. A subsequent stockholder cannot recover, however, even under this majority rule, (1) when he is not a bona fide stockholder, or (2) when himself guilty of acquiescence in the wrong, or (3) when himself guilty of laches, or (4) where the transferor of the stock would have been barred from bringing suit by laches or acquiescence or the like.'' (Fletcher Cyclopedia Corporations, [Perm. ed.] § 5980.) The opposing view is chiefly represented by federal cases which are controlled by a rule of procedure (Fed. Rules of Civ. Proc., rule 23[b]) similar to section 834. (Fletcher Cyclopedia Corporations, [Perm. ed.] § 5981.) The majority rule has been established in this state. (*Harvey* v. *Meigs*, 17 Cal.App. 353 [119 P. 941]; see *Earl* v. *Lofquist*, 135 Cal.App. 373 [27 P.2d 416]; *Beal* v. *Smith*, 46 Cal.App. 271 [189 P. 341].) In the Harvey case the court said (p. 364): ''However this may be, both plaintiffs in any view have, on the showing made in the complaint, a right to prevent the payment of the fraudulent

credits shown to stand on the company's books in favor of defendants. And if the defendants have without consideration and fraudulently appropriated $94,000 of the corporate funds which should be restored to its treasury, I fail to see why they have not a cause of action to compel such return, even though they acquired their shares after such misappropriation. (See the question fully considered in *Just* v. *Idaho Canal & Irr. Co.*, 16 Idaho 639 [102 P. 381, 133 Am.St.Rep. 140].)''

The majority opinion fails to point out any sound reason why a transferee of stock should not receive any rights of action incidental to ownership of the stock which the transferor had. There is no reason for doubting the soundness of the rule, for otherwise there is a grave question of discrimination. If a transferee cannot sue because he did not own stock when the fraud occurred, it would logically follow that if some qualified stockholder sued and recovered, the stock of the transferee could not benefit by the recovery. The benefit would have to go to his transferor. No one would advocate such a proposition. Hence it must follow that when the stock is transferred, the transfer carries with it the right to recover on behalf of the corporation for past frauds perpetrated by its officers. An expert in corporation law agrees that it is ''. . . a sound rule on principle as each share represents an interest in the entire concern and the several shareholders are entitled to equal rights irrespective of when they acquired their shares. The corporate cause of action is enforced for the benefit of all the shareholders.'' (Ballantine, *Abuses of Shareholders Derivative Suits: How Far is California's New "Security for Expenses" Act Sound Regulation?* 37 Cal.L.Rev. 399, 414.)

Further, in this connection, and also pointing out the substantial character of the right, the United States Supreme Court has this to say in speaking of similar but less drastic New Jersey legislation than our section 834: ''As business enterprise increasingly sought the advantages of incorporation, management became vested with almost *uncontrolled discretion in handling other people's money.* The vast aggregate of funds committed to corporate control came to be drawn to a considerable extent from numerous and scattered holders of small interests. *The director was not subject to an effective accountability.* That created strong temptation for managers to profit personally at expense of their trust. *The business code became all too tolerant of such practices.* Corporate laws were lax and were not self-enforcing, and *stockholders in face of*

*gravest abuses, were singularly impotent in obtaining redress
of abuses of trust.*

"Equity came to the relief of the stockholder, who had no
standing to bring civil action at law against faithless directors
and managers. Equity, however, allowed him to step into
the corporation's shoes and to seek in its right the restitution
he could not demand in his own. It required him first to
demand that the corporation vindicate its own rights, but
when, as was usual, those who perpetrated the wrongs also
were able to obstruct any remedy, equity would hear and
adjudge the corporation's cause through its stockholder with
the corporation as a defendant, albeit a rather nominal one.
This remedy, born of stockholder helplessness, was long the
chief regulator of corporate management and has afforded
no small incentive to avoid at least grosser forms of betrayal
of stockholders' interests. It is argued, and not without reason,
that *without it there would be little practical check on such
abuses.*" (Italics added.) (*Cohen* v. *Beneficial Ind. Loan
Corp.,* 337 U.S. 541, 547 [69 S.Ct. 1221, 93 L.Ed. 1528].)
And, speaking of the statutory requirement for security for
expenses (p. 555): "However, it creates *a new liability where
none existed before,* for it makes a stockholder who institutes
a derivative action liable for the expense to which he puts
the corporation and other defendants, if he does not make good
his claims. Such liability *is not usual and it goes beyond pay-
ment of what we know as 'costs.'* If all the Act did was to
create this liability, *it would clearly be substantive.* But this
new liability would be without meaning and value in many
cases if it resulted in nothing but a judgment for expenses
at or after the end of the case. Therefore, a procedure is
prescribed by which the liability is insured by entitling the ·
corporate defendant to a bond of indemnity before the outlay
is incurred. *We do not think a statute which so conditions
the stockholder's action can be disregarded by the federal
court as a mere procedural device.*" (Italics added.)

In the face of those salutary and established principles
the majority opinion arrives at the conclusion that section
834 was intended to apply to past transactions because, as to
the expense security requirement, it is mere procedure, a
proposition squarely contrary to the Cohen case, which holds
that the requirement is more than for costs. That the statute
would be given retroactive application in the instant case is
clear. The last word by this court on the subject is that:
"A retrospective law is one which affects rights, obligations,

acts, transactions and conditions which are performed or exist prior to the adoption of the statute." (*Aetna Cas. & Surety Co.* v. *Industrial Acc. Com.*, 30 Cal.2d 388, 391 [182 P.2d 159].) There is by section 834 a requirement that security be posted by the plaintiff in derivative actions, and the plaintiff must have owned the stock when the fraud occurred. The right to maintain the action by one who acquired stock after the perpetration of the fraud without posting security for expenses both existed before section 834 was passed. If that section is applied in this case those rights are being affected. The new law is one, which in the language of the Aetna case, affects rights, obligations and conditions which existed prior to its adoption. That is true of both the expense and ownership requirements.

We thus come to the question of whether it was intended that section 834 should be applied retroactively. "It is an established canon of interpretation that statutes *are not to be given a retrospective operation unless it is clearly made to appear that such was the legislative intent.* . . . It is contended upon behalf of respondents that this rule of statutory construction has no application to procedural statutes, and that section 4661 relates solely to matters of procedure or remedy. *Feckenschaer* v. *Gamble,* 12 Cal.2d 482 [85 P.2d 885], *City of Los Angeles* v. *Oliver,* 102 Cal.App. 299 [283 P. 298], *San Bernardino County* v. *Industrial Acc. Com.,* 217 Cal. 618 [20 P.2d 673], and *Davis & McMillan* v. *Industrial Acc. Com.,* 198 Cal. 631 [246 P. 1046, 46 A.L.R. 1095], are relied upon in support of the contention. In those cases, with one exception, it was held that the language of the statutes showed that the Legislature intended them to be applied retroactively, and the court was concerned mainly with the question of whether the Legislature has power to give those laws such retroactive effect. Since the question of the constitutionality of retroactive legislation and the question of the applicability of a rule of statutory construction are distinct (*Ware* v. *Heller,* 63 Cal.App.2d 817, 821 [148 P.2d 410]), these cases are not in point. . . . If *substantial* changes are made, *even in a statute which might ordinarily be classified as procedural,* the operation on existing rights would be retroactive because the legal effects of past events would be changed, and the *statute will be construed to operate only in futuro unless the legislative intent to the contrary clearly appears.*" (Italics added.) (*Aetna Cas. & Surety Co.* v. *Industrial Acc. Com.,* 30 Cal.2d 388, 393 [182 P.2d 159].) That the change in the law

wrought by the adoption of section 834 is substantial and does affect existing rights is too obvious to require further discussion. True, section 834 states that no action may be "instituted or maintained," but that is not sufficient to abrogate the rule that to be construed as retroactive in operation on substantial rights a statute must clearly so state. In *Shielcrawt* v. *Moffett*, 294 N.Y. 180 [61 N.E.2d 435, 159 A.L.R. 971], the court had before it a New York statute similarly phrased, which required posting of security for costs if plaintiff in a derivative action owned less than a specified percentage of stock. The court interpreted the statute as not applicable to an action which was commenced before its adoption, and while it mentioned a possible distinction between that situation and where the action was commenced later, it emphasized the nature of the right affected as substantial and invoked the rule of construction against retrospective operation, stating (p. 440 [61 N.E.2d]): "It is said that, when the Legislature provided that the defendant is entitled to require the plaintiff or plaintiffs to give security 'in any action instituted or maintained in the right of any foreign or domestic corporation,' it disclosed an intention that the statute should apply not only in actions thereafter instituted but also in actions previously 'instituted' and thereafter 'maintained.' The word 'maintained' may be used in a context where it clearly denotes that it includes pending actions. *Cf. George Moore Ice Cream Co.* v. *Rose*, 289 U.S. 373, 53 S.Ct. 620, 77 L.Ed. 1265. In other context it has frequently been given other construction. See cases collated in 38 C.J., Maintain §§ 2, 3, 4, 5. In the statute we are now construing it is at most equivocal and does not, we think, disclose an intent of the Legislature that it should be applied in actions previously instituted." A reasonable interpretation is that the use of the phraseology in section 834 that no action may be "instituted or maintained" unless the stock ownership at the time of the transaction is alleged, and security is posted if required, is merely another way of stating that a shareholder has no right of action on behalf of the corporation unless those conditions exist or are complied with. Such construction carries no retroactive implication. It does not necessarily point to an intent to have the statute operate on accrued rights. At best those words are equivocal and must be read in the light of section 4 of the Corporations Code that: "No action or proceeding commenced before this code takes effect, and no right accrued, is affected by the provisions of this code, but all procedure thereafter

taken therein shall conform to the provisions of this code so far as possible." True, reference is made to procedural statutes as applying to pending actions, but "rights" are also mentioned and here we have involved *substantial rights.* Section 4 is similar to a provision reading: "No part of it is retroactive, unless expressly so declared." (Civ. Code, § 3; Code Civ. Proc., § 3; Pol. Code, § 3.) That provision in those codes has been held to apply to amendments or additions to them as well as the original codes. (*Estate of Frees,* 187 Cal. 150 [201 P. 112]; *Teralta Land & Water Co.* v. *Shaffer,* 116 Cal. 518 [48 P. 613, 58 Am.St.Rep. 194]; *Blade* v. *Superior Court,* 102 Cal.App. 375 [283 P. 81].)

Furthermore, it should be remembered that section 834 embraces the requirement of shareholding at the time named as well as the requirement of security in one cohesive coverage regulating derivative actions. It is not to be supposed that part of it is to be retroactive but not the remainder, the security mandate and stockholder prerequisite, for the first sentence purports to require all of the conditions to be on the same footing. There can be no doubt that the stock ownership requirement would operate upon a prior accrued right of vital importance.

In connection with the ownership requirement it should be observed that the majority opinion does not discuss that phase of section 834, with reference to retroactivity. It holds the expense security requirement either is not being applied retrospectively, or even if it is, that is a proper construction of it. If such is true of that part of the section it must also be true of the ownership requisite, unless it is said that the parts of the section are severable, a problem heretofore mentioned by me but not even discussed in the majority opinion. If the majority thinks there is severability, it need not discuss the ownership feature. Otherwise it must.

The majority opinion endeavors to sidestep the ownership question by the statement: "As previously mentioned, . . . it was for failure to furnish the security as ordered that the action was dismissed. Thus as applied here the statute did not operate to absolutely preclude plaintiff from maintaining the suit; it merely required him to furnish the security if he were to proceed further in his fiduciary capacity." That is not true in any realistic sense. The majority concedes that the trial court based its dismissal of the action solely upon the fact that plaintiff was not an owner of stock when the fraud was committed. It was on *that basis, and that alone,* that

the expense security was ordered by the court. The dismissal followed when the security was not furnished. But, nevertheless, it was in effect based upon the lack of stock ownership. It is idle to reason, as does the majority, that plaintiff was not injured because he could have posted the security and thus avoided dismissal. If he had supplied it, he would have suffered the burden imposed by section 834, and his complaint would be subject to dismissal on general demurrer for it shows that he was not an owner of stock when the fraud occurred.

Finally, it should be pointed out that there are grave questions of constitutionality involving equal protection of the law which were not decided in *Cohen* v. *Beneficial Ind. Loan Corp.*, *supra*, 337 U.S. 541, in connection with the requirement that security be posted to cover expenses including attorney's fees and that such expenses shall be allowed against the security if the action is unsuccessful. A situation is presented where the plaintiff must pay the defendant's attorney's fees if unsuccessful, but the defendant is not required to pay plaintiff's counsel fees if the latter wins. Such a statute is invalid unless there is some reason why plaintiffs are in a different position than defendants. (See *Chicago & N. W. Ry. Co.* v. *Nye Schneider Fowler Co.*, 260 U.S. 35 [43 S.Ct. 55, 67 L.Ed. 115]; *Atchison etc. R. Co.* v. *Matthews*, 174 U.S. 96 [19 S.Ct. 609, 43 L.Ed. 909].) It may be argued that because of the danger of spite suits, bad faith suits, by stockholders in derivative actions it is proper to place those actions in a separate class, but that cannot apply here. Under section 834 plaintiff is to post security for attorney's fees when it appears on the motion therefor that the corporation would not benefit by the action. Suppose the court finds the corporation would probably benefit by the action, then the corporation should be required to post security for plaintiff's counsel fees, a wholly reasonable demand because the corporation is the one that benefits by the recovery; the action is on its behalf and ultimately for the good of all stockholders. Section 834 makes no such provision, however, and for that reason is strongly suspect of denying equal protection of the law.

I would therefore reverse the order of dismissal.

Gibson, C. J., and Traynor, J., concurred.

Appellant's petition for a rehearing was denied May 15, 1952. Gibson, C. J., Carter, J., and Traynor, J., were of the opinion that the petition should be granted.